562 P.2d 1104

**Leah D. JONES, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Mohave County Board of Supervisors, Respondent Employer,**

**State Compensation Fund, Respondent Carrier.**

**No. 1 CA–IC 1454.**

Court of Appeals of Arizona, Division 1, Department C.

April 5, 1977.

Machmer, Schlosser & Meitz, P.C. by Ronald M. Meitz, Phoenix, for petitioner.

John H. Budd, Jr., Chief Counsel, Phoenix, for respondent The Industrial Commission of Arizona.

Robert K. Park, Chief Counsel, Phoenix, for respondents Employer and Carrier.

## OPINION

FROEB, Chief Judge.

■ This review questions the denial by the Industrial Commission (Commission) of a petition for commutation of compensation to lump sum award authorized by A.R.S. § 23–1067. Review of a denial of such an award would, under ordinary circumstances, be limited to a determination of whether the Commission abused its discretion. *Prigosin v. Industrial Commission*, 113 Ariz. 87, 546 P.2d 823 (1976). Petitioner's contention is that, in this case, instead of exercising its discretion as to whether the lump sum commutation would have been in the best interest of petitioner, the Commission purported to investigate, review, and in substance, invalidate the prior award of the Commission establishing compensability and fixing lost earning capacity.

The award which petitioner sought to have commuted to a lump sum was arrived at by stipulation between petitioner and the State Compensation Fund (the Fund), respondent carrier. In conjunction with the stipulation, petitioner and the Fund also agreed that, if the Commission refused to reduce the award to a lump sum, the percentage of petitioner's lost earning capacity would be readjusted upward. The validity of these agreements and their effect upon the Commission with respect to its function in deciding for or against a lump sum commutation thus become the subject of review in this court.

The chronological details of these proceedings follow. On January 14, 1973, petitioner, Leah Jones, was injured in an industrial accident as a result of which she suffered a 60% general physical functional disability and was given an unscheduled per-

manent award. On August 1, 1974, the Commission issued a further award finding that petitioner was capable of being a part-time baby-sitter and that she had suffered an 81.20% loss of earning capacity entitling her to monthly compensation benefits of $154.46. Petitioner filed a timely protest to this award, contending that she had suffered a 100% loss of earning capacity and that she wanted commutation of her benefits to a lump sum. Following this, she retained an attorney with whom she discussed the possibility of obtaining a lump sum commutation. Although she was advised there was a possibility that she might be able to obtain an increase in her monthly compensation based upon a higher percentage of lost earning capacity (hereinafter referred to as L.E.C.) after a hearing, she decided to abandon her protest to the 81.20% L.E.C. award and to pursue a lump sum commutation. To this end, a stipulation between herself and the Fund was signed on February 12, 1975, stating that petitioner was now able to do full-time baby-sitting and that as a consequence her lost earning capacity was 49.55%, which would yield to her $94.24 per month. The stipulation was incorporated by the hearing officer into a findings and award for un-scheduled permanent partial disability which became final. Simultaneously, it was agreed in writing by petitioner and the Fund that if the Commission refused to approve a lump sum award, the 81.20% L.E.C. yielding benefits of $154.46 per month would be reinstated by means of a petition for rearrangement.

The petition for lump sum commutation was filed with the Commission and denied administratively without hearing on September 16, 1975. Following a timely request, a hearing was held on December 11, 1975. The factual data in the petition and documents presumably supporting the uses to which petitioner would put the money awarded to her if a commutation were approved were before the Commission for consideration, although little testimony relating to the proposed use of the money was presented by petitioner or solicited by the Commission. By and large, the hearing consisted of inquiries by the Commission members of the steps and stipulations leading to the 49.55% award previously entered by the hearing officer. Petitioner and her attorney were both questioned as to whether petitioner understood the agreements which had been previously made and as to whether they were advisable. There were comments from the Commission members that it was improper for the award to be based upon petitioner's ability to do full-time baby-sitting when at the hearing petitioner stated to the Commission that she was not physically able to do this. Petitioner stated that she did not understand when she signed the petition what her previous 81.20% L.E.C. award, if commuted, would be worth, but nevertheless adhered to her wish that the 49.55% L.E.C. award be commuted to a lump sum. Testimony at the hearing revealed that the former was worth approximately $26,000 in present value and that the latter was worth approximately $14,000. Without further elaboration, suffice it to say that most of the hearing was devoted to an exploration of the reasons and understandings underlying the entry of the 49.55% L.E.C. award. Thereafter, on December 16, 1975, the Commission filed its Decision Upon Hearing and Findings and Order denying lump sum commutation. While the order recited that the Commission reviewed the file and all related matters, no specific reason was stated for the action taken.

▮▮▮ Commutation of compensation to a lump sum may be sought by a claimant pursuant to A.R.S. § 23–1067, the relevant part of which reads as follows:

B. The commission may allow commutation of compensation . . . to a lump sum not to exceed twenty-five thousand dollars, with the consent of the carrier liable to pay the claim, under such rules, regulations and system of computation as it devises for obtaining the present value of the compensation.

The claimant must show that it is in his best interest that he be awarded a cash settlement rather than monthly payments. As very clearly pointed out by the Arizona

Supreme Court in *Prigosin v. Industrial Commission,* supra, "the purpose of workmen's compensation law is to prevent [a claimant] and his dependents from becoming public charges during the period of disability." 113 Ariz. at 89, 546 P.2d at 825. Because a cash sum can be quickly exhausted, the Commission must weigh carefully its purported benefit to the claimant against the certainty of monthly payments. We think that was done here when the Commission denied the commutation. Nevertheless, petitioner argues that a reading of the hearing transcript demonstrates that the reason the commutation was denied was because the Commission found fault with the underlying L.E.C. award.

█ We are called upon, therefore, to determine if the Commission, in a lump sum hearing, may inquire into an underlying L.E.C. award which is coupled with an agreement of the parties for rearrangement in the event the commutation is denied and, having done so, consider this as an additional factor in the decision to grant or deny the lump sum. We hold that it may, in determining whether a lump sum commutation would be in the best interest of the claimant.

We first reach the threshold consideration of whether a final award for L.E.C. is valid where it arises from a compromise between the parties. Stated otherwise, can the parties settle a disputed issue as to L.E.C. by agreement? We think the answer to this is clearly in the affirmative.

A.R.S. § 23–1025 states: "An agreement by an employee to waive his rights to compensation, except as provided in this chapter . . . shall be void." Nevertheless, A.R.S. § 23–107(A)(3) provides that the Commission has the authority to "promote the voluntary arbitration, mediation and conciliation of disputes between employers and employees, . . .." Moreover, A.R.S. § 23–941(C) provides: "The presiding hearing officer may dismiss a request for hearing when it appears to his satisfaction that the disputed issue or issues have been resolved by the parties."

█ Recent decisions of this court and the Arizona Supreme Court approve settlements and compromises in certain instances. When compensability is in dispute, there is no prohibition to compromise between the parties. *Gray v. Industrial Commission,* 24 Ariz.App. 499, 539 P.2d 973 (1975), approved 113 Ariz. 296, 552 P.2d 766 (1976); *Travelers Insurance Co. v. Industrial Commission,* 21 Ariz.App. 298, 518 P.2d 1015 (1974). As stated in *Gray:*

> The scope and criterion of the Commission review of such proposed settlements is succinctly set forth in *Brigham Young University v. Industrial Commission of Utah,* supra, [74 Utah 349, 279 P. 889] and need not be here repeated. The sole issue is the genuineness and bona fides of the parties regarding the issue of compensability. If reasonable men would differ as to whether the claim is compensable or not, the stipulation and settlement should be approved. 24 Ariz.App. at 503, 539 P.2d at 977.

In the present case, compensability was never in dispute, nor was the extent of physical disability. There was, however, disagreement between the petitioner and the Fund as to the extent of lost earning capacity. The Commission determined administratively that petitioner sustained an 81.20% reduction in monthly earning capacity, entitling her to $154.46 per month. Petitioner protested this award and claimed she was unable to work at all and sustained a 100% reduction in earning capacity. It was following the request for hearing that she and the Fund entered into the stipulation, approved by the Commission, that she could work as a full-time baby-sitter and as a consequence sustained only a 49.55% loss in earning capacity. In return for petitioner's agreement, the Fund gave its consent to her petition for commutation to a lump sum award which apparently it would not have done if her lost earning capacity had been 81.20%. The incentive for the Fund was, of course, the potential savings it would realize since the award for 81.20% commuted value would have been $26,000, whereas under the 49.55% award it was $14,000.

In our opinion it was proper for the petitioner and the Fund to enter into a compromise concerning the extent of lost earning capacity since there was a genuine dispute between them on this issue. The *Gray* case approved compromise between the parties as to the issue of compensability. We think the same considerations are present with respect to lost earning capacity. When a compromise is made, it must be scrutinized by the Commission which has the authority to approve or disapprove it. A compromise approved by the Commission in L.E.C. proceedings becomes a final award and should be considered as such by the Commission in a lump sum proceeding.

Does the further agreement of the parties to establish a higher L.E.C. in the event the lump sum is denied alter this? We think not. It is true that such an agreement injects an added contingency into proceedings, but it is not unlawful. The right to do so stems from the same authority we have cited earlier allowing the parties to compromise.

This is not to say, however, that the Commission may not inquire into the agreements of the parties in the lump sum hearing and consider them as any other evidence in the context of what is in the best interest of the claimant. Indeed, it is desirable that it do so since the prospect of a higher L.E.C. for the claimant following denial of a lump sum is a relevant consideration in deciding whether to grant it in the first place. The obvious guide for the Commission then becomes: would the commutation to lump sum of the present award be in the best interest of the claimant when compared to the *potential* L.E.C. agreed to by the parties? We see, then, that the existence of such an agreement tends to be a factor weighing against the sought-for lump sum because of the higher monthly benefits it would produce.

In conclusion, the Commission did not improperly consider evidence relating to the agreements of the parties in its decision denying the lump sum award. Having thus resolved this issue, the contention that the Commission exercised its discretion upon improper grounds is rejected. The overall evidence before the Commission supports its award denying the lump sum commutation. The award is affirmed.

JACOBSON, P. J., and HAIRE, J., concur.