730 P.2d 214

**SAFEWAY STORES, INC.,
Petitioner Employer,**

**Safeway Stores, Inc., c/o Home Insurance Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Racheal Gabaldon,
Respondent Employee.**

**No. 1 CA–IC 3185.**

Court of Appeals of Arizona,
Division 1, Department C.

Nov. 7, 1985.

O'Connor, Cavanagh, Westover, Killingsworth & Beshears by J. Victor Stoffa, Phoenix, for petitioners employer and carrier.

Dennis P. Kavanaugh, Chief Counsel, The Industrial Com'n of Arizona, Phoenix, for respondent.

Machmer, Schlosser & Meitz, Ltd. by Ronald M. Meitz, Phoenix, for respondent employee.

## OPINION

CONTRERAS, Judge.

This case presents the court with questions regarding the validity of compensation settlements within the existing framework of Arizona's Workers' Compensation system. The pivotal question is whether under our present statutes and case law a written settlement agreement between a claimant and the employer/carrier which settles post-compensability issues is valid. We hold that such a settlement agreement is void and that the Industrial Commission has neither the jurisdiction nor the authority to resolve any disputes which may have been generated as a result of such invalid agreement. The award is affirmed.

The relevant facts as disclosed by the record follow. The claimant injured her back in an industrial incident on January 30, 1978. The injury ultimately required surgery in April of 1978, consisting of a bilateral partial laminotomy of L4 and L5 for excision of a protruded disc. Ultimately, her condition was determined to be stationary by a group consultation which found she had sustained a 15% general physical impairment as a result of her industrial injury. The claimant protested the termination of temporary disability benefits. Subsequent hearings resulted in a Decision Upon Hearing extending temporary disability benefits, finding the condition stationary, and noting that claimant had sustained a 15% general physical impairment. Additionally, the decision included a finding that the claimant sustained no permanent urological or psychiatric impairment and entitled her to supportive psychotherapy after termination of her temporary disability. The determination with respect to loss of earning capacity and amount of permanent partial disability was left for future administrative action in accordance with A.R.S. § 23–1044. Both the claimant and petitioners requested administrative review. The administrative decision was affirmed on review and on October 28, 1981, petitioners filed a Special Action—Industrial Commission (1 CA–IC 2695). On January 19, 1982, a notice of claim status was issued denying claimant treatment from a medical practitioner for urinary problems. Claimant filed a request for hearing directed to such notice.

In March of 1982, claimant, acting through her counsel, proposed to petitioners' counsel a means by which potential litigation on the then pending Special Action—Industrial Commission, on the outstanding request for hearing, and on ultimate loss of earning capacity might be resolved. The proposal essentially involved petitioners paying claimant the sum of $19,500, less a credit for benefits previously paid following the initially determined stationary date. In exchange, claimant would dismiss the appellate proceeding, withdraw the request for hearing, and exe-cute documents stipulating to an Award of the Commission finding no loss of earning capacity and a *side agreement* granting petitioners certain credit rights in the event of future reopening, to be assessed solely against permanent disability compensation but not medical benefits. The proposal was subsequently accepted by petitioners and the parties agreed to dismiss the pending Special Action—Industrial Commission. Based upon written stipulation, an order of dismissal was entered by this court on September 24, 1982. Claimant had previously withdrawn the request for hearing directed to the January 19, 1982, notice of claim status.

On December 1, 1982, all of the settlement documents contemplated by the parties were drafted. These included the "Stipulation for Entry of Award Re: LEC" and the separate *side agreement* entitled "Stipulation and Agreement" (also referred to as private settlement agreement), which set forth the credit rights and specific amounts involved. Petitioners then directed a copy of the Stipulation For Entry Of Award Re: LEC to the Industrial Commission. Counsel for petitioners unintentionally and inadvertently also sent a copy of the *side agreement* to the Commission. On December 9, 1982, claimant executed the *side agreement* (i.e., Stipulation and Agreement). The following day the petitioner carrier remitted to claimant's counsel the sums in question with an authorization to disburse $4,000 to claimant as an agreed upon advance and retain the balance in trust pending finalization of the LEC award. However, it was subsequently ascertained that the full proceeds of the settlement were disbursed to the claimant by her counsel.

On January 4, 1983, the then acting Chief Counsel for the Industrial Commission advised representatives of petitioner carrier that the *side agreement* entered into between the petitioners and claimant had been submitted to the Commission with the stipulation regarding earning capacity. The acting Chief Counsel, referring in his correspondence to the side agreement

which described the sums to be paid to claimant as well as the credit rights of petitioners, stated that:

> Such agreements are *not* binding upon the Industrial Commission, nor will they be enforced by the Commission. Said agreement is violative of several statutory provisions of Arizona's Workmen's Compensation Act. Specifically, A.R.S. Section 23–1025 makes any waiver of compensation benefits, including future benefits, null and void as a matter of law. In addition, said agreement violates A.R.S. Sections 23–1067 and 23–108.-03(B)(2) which provide that the Commission is the sole authority that may commute a workmen's compensation award to a lump sum. (Emphasis in original.)

On February 23, 1983, the Commission issued its administrative Findings and Award noting the 15% physical functional disability of claimant and finding that she had sustained a 26.97% reduction in earning capacity entitling her to $110.02 per month. On March 8, 1983, petitioners protested the award and on March 16, 1983, claimant protested the award, contending she had "a greater loss of earning capacity than determined by the Industrial Commission."

On August 25, 1983, counsel for claimant wrote the Commission stating that:

> I want to make it clear that we certainly admit there was an agreement and stipulation. This is a matter of record. I am not taking a position either way on the validity of the agreement, but have simply agreed to certain facts and have allowed the Commission to make whatever decision it deems appropriate.

He added that since the Commission invalidated the settlement agreement, "I have been compelled to represent my client on further LEC proceedings...."

The presiding administrative law judge informed the parties in advance of the loss of earning capacity hearing that—

(1) There would be a hearing on the merits;

(2) There would be no consideration of the purported compromise and settlement;

(3) The Commission would in some cases accept a no loss of earning capacity stipulation furnished under A.C.R.R. R4–13–152 if it is supported by evidence in the record; and

(4) The stipulation in the instant matter was accompanied by a settlement agreement although the only issue which could be the subject of compromise and settlement under existing case authority was the issue of compensability.

Hearings were held on the loss of earning capacity issue in August, September and November, 1983. On December 23, 1983, the administrative law judge entered his Decision Upon Hearing which included in Finding 4 the following factual conclusion:

> Applicant's limitations would not preclude her from obtaining employment and pursuing the duties of a medical technician or medical assistant. Such positions are reasonably available in her current place of residence in the Phoenix, Arizona area in which she has since May 1983 chosen to live.... In applicant's capacity as a medical technician and/or medical assistant ... she would be able to earn on a monthly basis in excess ... of what her average monthly wage was at the time of injury thus sustaining no reduction in earning capacity....

Finding 2 of the subsequent Decision Upon Review added an additional finding to the Decision Upon Hearing, stating in relevant part:

> No credit has been given in the instant case by the Industrial Commission nor can be given to payments made upon behalf of defendant insurance carrier to applicant under an alleged compromise and settlement agreement previously entered into by the parties.

On April 12, 1984, the petitioners filed a Petition for Special Action—Industrial Commission. Counsel for petitioners and counsel for the claimant both urge that the parties to a workers' compensation proceeding should be allowed to settle post-

compensability issues and that the use of a private settlement agreement is proper to achieve this purpose. They also suggest that such private settlement (side) agreements are frequently used although not submitted to the Commission. The Industrial Commission in its brief urges that the use of such private settlement agreements to settle post-compensability issues is improper.[1]

We agree that, as a general proposition, the disposition of legal disputes through compromise and settlement is a desirable objective and is readily utilized on a continuing basis, particularly in the area of private tort claims. However, this general proposition does not always hold true in the workers' compensation area because of the constitutional, legislative, and judicially imposed strictures which support a workers' compensation system designed to provide an injured worker with benefits, both medical and compensation, during the term of the worker's disability and prevent such injured worker and his/her dependents from becoming public charges during the period of disability. *See Prigosin v. Industrial Commission*, 113 Ariz. 87, 546 P.2d 823 (1976); *Jalifi v. Industrial Commission*, 132 Ariz. 233, 644 P.2d 1319 (App. 1982). In furtherance of this system, with its attendant objectives, an impartial administrative framework has been designed to insure payment of the entire benefits to which an injured worker is entitled. We state this to emphasize the pervasive and distinctive differences between workers' compensation claims and private tort claims.

We are confident that counsel for petitioners and the claimant were sincere in negotiating a compromise and settlement agreement in the best interests of their respective clients. But the immutable legal conclusion remains that such a *side agreement* is not a valid agreement.

We first consider the relevant statutory provisions. A.R.S. § 23–906 provides that an employee is generally deemed to have accepted workers' compensation unless, prior to sustaining injury, the employee rejects the provisions of the workers' compensation law by signed and dated written notice delivered to the employer before the injury. A.R.S. § 23–1025 succinctly provides that "[a]n agreement by an employee to waive his rights to compensation, except as provided in this chapter ... *shall be void.*" (Emphasis added.) A.R.S. § 23–1067 grants the Commission the exclusive power in its discretion to approve lump sum commutations of permanent benefit awards.

Settlement of workers' compensation claims has been authorized where compensability is a good faith dispute between the parties and there has been no final determination that the claim is compensable. *Gray v. Industrial Commission*, 24 Ariz. App. 499, 539 P.2d 973 (1975), *aff'd per curiam*, 113 Ariz. 296, 552 P.2d 766 (1976). Fairness in such a matter is not determined by reference to statutory compensation amounts. *Employers Mutual Liability Ins. Co. v. Industrial Commission*, 121 Ariz. 558, 592 P.2d 392 (App.1979). The same development has not occurred with respect to settlement of post-compensability issues.

Petitioners candidly admit this court has previously stated in clear and unequivocal terms that the Commission's authority and jurisdiction to approve a compromise settlement is severely restricted *once a claim has been accepted as compensable.*

---

1. The Industrial Commission filed an answering brief. Petitioners then filed a motion to strike such answering brief asserting that the Commission lacked standing to participate in this case, citing *St. Luke's Hospital v. Industrial Commission*, 114 Ariz. 118, 559 P.2d 674 (App.1976) and *M.J. Evertsen v. Industrial Commission*, 117 Ariz. 378, 573 P.2d 69 (App.1977), *aff'd*, 117 Ariz. 342, 572 P.2d 804 (1977). The Commission responded to the motion to strike, urging that it did have standing to participate because of its legitimate interest in assisting the court in reaching a correct result regarding matters involving the general interest of the Commission in its effort to properly discharge its statutory authority. *St. Luke's Hospital v. Industrial Commission, supra.* This court previously entered an order taking the motion under advisement for decision at the time the merits of the case are considered. The motion to strike the Commission's answering brief is denied.

It is well established that once a compensation claim has been accepted as compensable the Commission is without authority or jurisdiction to compromise or approve a compromise settlement unless it is under the lump-sum commutation provisions of A.R.S. § 23–1067. The pertinent parts of A.R.S. § 23–1025 read:

"An agreement by an employee to waive his rights to compensation, except as provided in this chapter ... shall be void."

See *Doby v. Miami Trust Co.*, 39 Ariz. 228, 5 P.2d 187 (1931); *Goodrich v. Industrial Commission*, 13 Ariz.App. 402, 477 P.2d 276 (1970).

*Travelers Insurance Co. v. Industrial Commission*, 21 Ariz.App. 298, 299, 518 P.2d 1015, 1016 (1974).

Petitioners assert that they believe *Travelers* is "fully distinguishable in some respects and quite possibly inaccurate in others." We acknowledge that there are some distinctions between the facts in *Travelers* and those presented here. However, these factual differences make no substantive difference and the *Travelers* rationale is clearly applicable. In *Travelers*, the claimant suffered a back injury while in the course of his employment and his claim was accepted for benefits. He was granted temporary compensation and medical benefits which he received until such time as he was granted an unscheduled permanent partial disability award. The claimant and a claims adjuster for the carrier then negotiated a settlement of $25,000, which was paid directly to the claimant without notification to the Commission. The claims adjuster advised claimant not to inform the Commission of the settlement. At that point, the Commission had not conducted a hearing nor entered an award relative to the claimant's loss of earning capacity. It had not considered, let alone authorized, any lump sum commutation. The same situation obtains here. Apparently the claimant in *Travelers* had some misgiving about the settlement and, at a subsequent formal hearing, he acknowledged receipt of the $25,000, but asserted that duress and misrepresentations were used by the insurance carrier's adjuster. The Commission refused the insurance carrier's request to order the claimant to refund the $25,000 or to allow the carrier to claim the payment as an offset on future monthly payments due claimant under the award.

In *Travelers*, this court concluded that the private settlement agreement in question was invalid since "once a compensation claim has been accepted as compensable the Commission is without authority or jurisdiction to compromise or approve a compromise settlement unless it is under the lump sum commutation provisions of A.R.S. § 23–1067." The court observed that:

At the time of the payment by the Insurance Carrier to the Employee there could be no commutation since there had never been a hearing to determine the Employee's loss of earning capacity and there was no monthly payment award to commute to a lump-sum award. 21 Ariz. App. at 300, 518 P.2d at 1017.

The petitioners point out some obvious factual distinctions, not the least of which are that the parties here were represented by counsel, that there is no suggestion of duress or misrepresentation, and that this claimant and petitioners were not challenging the validity of the agreement and in fact were desirous of having the private settlement agreement approved. Petitioners further point out that in the present case "there was notification to the Commission and an attempt to obtain the concurrence of the Administrative Law Judge in a stipulation reasonably supported by facts in evidence." We agree that there was notification to the Commission, albeit by the inadvertent and unintentional mailing of the private settlement agreement to the Commission. It was only after such inadvertent disclosure that Commission approval was sought.[2] Petitioners further assert, and it appears undisputed, that the settlement favored the claimant and "[r]esultantly, the actual benefits awarded below probably equal only a small fraction of the

2. Petitioners have also cited A.C.R.R. R4–13–120     as authority for permitting settlement agree-

sums expended in settlement of this matter pursuant to a reasonable stipulation of the parties."

Although we are reasonably convinced that the private settlement in this particular case was fair and reasonable, we nonetheless are firmly convinced that under our presently constituted workers' compensation system, the private settlement agreement was void and was tantamount to an attempted usurpation of the exclusive statutory power and duty of the Commission within the rationale expressed in *Travelers*.

Accordingly, and under the completely developed circumstances surrounding the "Stipulation and Agreement" (i.e., the private settlement, or side agreement), we believe that the administrative law judge could not accept the "Stipulation for Entry of Award Re: LEC" and had no alternative other than to proceed to formal hearing. We also are of the opinion that the administrative law judge was correct in his decision to reject any credit for payments made by the insurance carrier since none could be given under an invalid private settlement agreement. We further conclude, as we did in *Travelers*, that any dispute concerning the disbursement of money under the private settlement agreement, together with any asserted rights, duties, and obligations of the parties, cannot be litigated before the Commission. Whatever relief is sought must be in a forum other than the Commission.

Although we are convinced that the present statutory and decisional law mandates the result reached in this case, we believe that perhaps the time has arrived in the practical, real-world administration and litigation of workers' compensation claims to authorize the use of private settlement agreements which settle post-compensability issues. The realities of the present case strongly support such usage. However, we cannot close our eyes to the fact that there does exist a realistic danger of misuse and abuse of such settlement agreements to the detriment of injured workers

who may find themselves in a vulnerable and less than equal negotiating position. The injured worker's interests must be protected. Perhaps such latent fears could be dispelled and the workers' interests protected by authorizing the use of such private settlement agreements subject to the approval of the Industrial Commission. In any event this is a matter which, under our existing workers' compensation system, is more properly directed to the legislature and not to the court since rights and remedies under the workers' compensation law are completely statutory. *Still v. Industrial Commission*, 146 Ariz. 433, 706 P.2d 759 (App.1985); *Sandoval v. Salt River Project Agricultural Improvement and Power District*, 117 Ariz. 209, 571 P.2d 706 (App.1977).

For the foregoing reasons, we hold that a private settlement agreement which settles post-compensability issues is void. The award is affirmed.

BROOKS and EUBANK, JJ., concur.

---

ments. Aside from the fact that the rule does not specify the circumstances in which such agreements may be used, A.C.R.R. R4–13–120

must be considered within the context of existing decisional law which in this instance is *Travelers*.