730 P.2d 219

**SAFEWAY STORES, INC.,
Petitioner Employer,**

**Safeway Stores, Inc., c/o Home Insurance Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Racheal Gabaldon,
Respondent Employee.**

**No. CV 86 0091–PR.**

Supreme Court of Arizona,
En Banc.

Dec. 12, 1986.

---

O'Connor, Cavanagh, Anderson, Westover, Killingsworth & Beshears by J. Victor Stoffa, Phoenix, for petitioner employer and petitioner carrier.

Dennis P. Kavanaugh, Chief Counsel, Industrial Com'n of Ariz., Phoenix, for respondent.

Ronald M. Meitz, Phoenix, for respondent employee.

FELDMAN, Justice.

The issue in this case is whether workers' compensation claims may be settled after compensability has been established but before lost earning capacity has been determined. The court of appeals held that because A.R.S. § 23–1025 [1] prohibits settlement once compensability has been established, the Industrial Commission (Commission) lacks jurisdiction to accept or review post-compensability settlements. *Safeway Stores, Inc. v. Industrial Commission*, 152 Ariz. 37, 730 P.2d 214 (Ct.App.1985).

1. A.R.S. § 23–1025 was renumbered (as § 23–1025(A) and (B)) and amended in 1985 and 1986. Those amendments did not affect the statutory language at issue here.

2. Safeway was represented by its insurance carrier, Home Insurance Company. We refer to

We accepted review to clarify A.R.S. § 23–1025 and its effect on the Commission's jurisdiction over post-compensability settlements. Rule 23(c)(4), Ariz.R.Civ.App.P., 17A A.R.S. (Supp.1986). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

FACTS

Racheal Gabaldon (Gabaldon) injured her back while working for Safeway Stores, Inc. (Safeway) in 1978. The full story of her interaction with Arizona's workers' compensation system is recorded in the court of appeals' opinion. At 37–40, 730 P.2d at 214–17. The facts relevant to our decision begin with a Decision Upon Hearing dated August 14, 1981. In addition to establishing that Gabaldon's claim was compensable, the August 14 decision found that Gabaldon had sustained a fifteen percent general physical impairment, that her condition was stationary, and that she had not sustained permanent urological or psychiatric impairment. No determination of the extent of permanent partial disability, lost earning capacity, or the amount of compensation, if any, was made; determination of these matters was left for future administrative action in accordance with A.R.S. § 23–1044.

Both Gabaldon and Safeway [2] requested administrative review of the August 14 decision. After the decision was affirmed on administrative review, Gabaldon sought appellate review by special action in the court of appeals. [3] On January 19, 1982, a Notice of Claim Status was issued denying Gabaldon medical treatment for urological problems. Gabaldon also requested a hearing regarding that notice.

In March 1982, Gabaldon proposed a settlement with Safeway. In exchange for approximately $19,500, less credit for benefits previously paid, Gabaldon agreed to

Safeway and Home Insurance Company simply as "Safeway."

3. In Arizona, relief formerly obtained by writs of prohibition, mandamus or certiorari is now obtained by "special action." Rule 1, Ariz.R.P. Spec.Act., 17A A.R.S.

dismiss the special action, to withdraw her request for hearing, and to stipulate to no lost earning capacity. Safeway accepted the proposed settlement. By December 1982, the parties had drafted and signed two settlement documents: a stipulation that the Commission could enter an award finding no lost earning capacity and a "side agreement" setting forth Safeway's credit rights if Gabaldon later moved to reopen the award. After the settlement agreements were signed, Safeway paid the agreed sum.

In December 1982 Safeway's counsel sent a copy of the stipulation regarding lost earning capacity to the Commission, inadvertently enclosing a copy of the side agreement. The Commission's chief counsel subsequently notified Gabaldon and Safeway that the Commission was not bound by and would not enter an award based on the parties' settlement agreement. The Commission then entered its Award, finding that Gabaldon had sustained a 26.97 percent loss in earning capacity entitling her to $110.02 per month. Both parties requested administrative review of the Award.

Before beginning administrative review, the presiding administrative law judge (ALJ) informed both parties that their stipulation would not be accepted. The judge explained that although the Commission sometimes accepted a no-loss-of-earning-capacity stipulation supported by evidence in the record, the parties' stipulation was based on an invalid agreement that purported to settle a controverted issue. Rejecting Safeway's arguments, the ALJ held that the parties' agreement was invalid because it was made after Gabaldon's claim had been accepted as compensable.

The ALJ conducted hearings on lost earning capacity from August to November 1983. The ALJ found that Gabaldon had sustained "no reduction in earning capacity," but refused to give Safeway credit

for money paid to Gabaldon under the settlement agreement. Safeway subsequently filed a special action petition with the court of appeals.

On appellate review, Gabaldon and Safeway both urged the court to allow settlement of post-compensability issues. Nevertheless, the court of appeals held the parties' settlement agreement void, reasoning that it was "tantamount to an attempted usurpation of the exclusive statutory power and duty of the Commission...." At 42, 730 P.2d at 219 (relying on A.R.S. § 23–1025). The court further held that because the settlement agreement was void, any dispute regarding disbursement of money under the agreement "cannot be litigated before the Commission." *Id.* at 42, 730 P.2d at 219. Basing its decision on *Travelers Insurance Co. v. Industrial Commission*, 21 Ariz.App. 298, 518 P.2d 1015 (App.1974),[4] the court of appeals held that settlements are permissible, subject to Commission approval, only before a claim is accepted as compensable. The court held that once compensability has been established, the parties have no authority to settle issues such as lost earning capacity and the amount of compensation benefits.

## DISCUSSION

The issue before us—whether workers' compensation claims may be settled after compensability has been established—turns on the proper interpretation of A.R.S. § 23–1025:

> An agreement by an employee to *waive his rights to compensation,* except as provided in this chapter, or an agreement by an employee to pay any portion of the premium paid by his employer shall be void....

(Emphasis added). Professor Larson has noted that statutes such as A.R.S. § 23–1025

> could be quite justifiably construed to mean either (1) that no employee shall be

---

**4.** Although the court of appeals felt that its decision was compelled by the statutory scheme and *Travelers,* it noted "that perhaps the time has arrived in the practical, real-world adminis-

tration and litigation of workers' compensation claims to authorize the use of private settlement agreements which settle post-compensability issues." 152 Ariz. at 42, 730 P.2d at 219.

allowed to contract away his compensation rights generally, i.e., before any claim has arisen, or (2) that, in addition to this general inability to waive his rights, he cannot, after a claim has arisen, compromise his rights to the full benefits specified in the act.

3 A. LARSON, THE LAW OF WORKMEN'S COMPENSATION § 82.32, at 15-562 (1983). Professor Larson notes further that with or without such statutes, the majority rule "appears to be that a claimant cannot validly agree to take less compensation than that specified by the statute. The minority position is that a claim for compensation rights may be compromised like any other claim." *Id.* § 82.31, at 15-559 to -560, § 82.32, at 15-562 to -563. As Professor Larson recognizes, Arizona has already espoused at least part of the minority position by allowing settlement *before* compensability is established. *Id.* § 82.31, at 15-560 to -561 n. 40 (citing *Employers Mutual Liability Insurance Co. v. Industrial Commission*, 121 Ariz. 558, 592 P.2d 392 (App.1979)).

Safeway and Gabaldon argue that a settlement is not a waiver and that the statute only applies to actual waiver of compensation rights *before* injury occurs. Thus, they contend, once an injury has occurred and either compensability *or* the amount of compensation is disputed, parties are free to settle their claims, subject to the Commission's approval. In contrast, the Commission argues that once compensability has been established, A.R.S. § 23-1025 precludes settlement agreements, leaving the Commission without authority to review or approve such settlements. In the Commission's view, settlements are permissible, subject to Commission approval, only before compensability is established.

## A. *Prior Case Law*

### 1. *Travelers Insurance Co. v. Industrial Commission*

The Commission's reading of A.R.S. § 23-1025 is supported by the court of appeals' decision in *Travelers*, 21 Ariz.App. 298, 518 P.2d 1015. In that case, the insur-

ance carrier entered into a settlement agreement with the employee-claimant after compensability had been determined but before the amount of lost earning capacity had been decided. The carrier paid the employee $25,000 and told him not to inform the Commission of the settlement. The employee, however, later went before the Commission alleging that he had accepted the settlement under duress. After a formal hearing, the Commission entered an award for unscheduled permanent partial disability. The Commission refused to consider the prior settlement or to offset the future monthly payments by the amount of the settlement.

The court of appeals upheld the Commission's decision, characterizing the settlement of post-compensability claims as "challeng[ing] the basic concept that the Industrial Commission shall control the proceedings under the Arizona Workmen's Compensation Act." 21 Ariz.App. at 299, 518 P.2d at 1016. The court, relying on A.R.S. § 23-1025, thought it "well established that once a compensation claim has been accepted as compensable the Commission is without authority or jurisdiction to compromise or approve a compromise settlement...." *Id.*; *accord Goodrich v. Industrial Commission*, 13 Ariz.App. 402, 404, 477 P.2d 276, 278 (App.1970). Review by this court was not sought in *Travelers*.

Standing alone, *Travelers* supports the court of appeals' opinion in this case. Since *Travelers* was decided, however, its reasoning has been undermined by two cases, *Gray v. Industrial Commission*, 24 Ariz.App. 499, 539 P.2d 973 (App.1975), *approved per curiam*, 113 Ariz. 296, 552 P.2d 766 (1976) and *Jones v. Industrial Commission*, 114 Ariz. 606, 562 P.2d 1104 (App. 1977).

### 2. *Gray v. Industrial Commission*

In *Gray*, the claimant allegedly suffered a heart attack at work. He submitted a claim for benefits, but his employer's insurance carrier disputed compensability. The claim was eventually settled before the Commission determined compensability.

When the parties submitted their settlement agreement to the Commission for approval, the Commission refused to approve or to disapprove the agreement, asserting that it lacked jurisdiction except to determine compensability. 24 Ariz.App. at 500, 539 P.2d at 974.

The court of appeals held that A.R.S. § 23–1025 does not preclude settlements before compensability is determined. The court reasoned that settlement of a disputed claim is not a waiver of the employee's right to compensation:

> "It is a contradiction of terms to say that, when a present and existing claim is settled, the claim itself ... is waived. By making such a settlement, it in no sense may be said that the 'rights to compensation under the' act were surrendered or waived. To the contrary, such rights were thereby asserted, affirmed, and recognized, not waived."

24 Ariz.App. at 502, 539 P.2d at 976 (quoting *Brigham Young University v. Industrial Commission*, 74 Utah 349, 361, 279 P. 889, 893 (1929)). The court further held that the Commission had jurisdiction, under A.R.S. § 23–107(A)(3), to review settlements entered into before compensability was established. 24 Ariz.App. at 503, 539 P.2d at 977. The court of appeals' opinion was adopted and approved, *per curiam*, by this court. 113 Ariz. 296, 552 P.2d 766.

Because *Gray* approved only settlement of workers' compensation claims before compensability is established, it is not necessarily inconsistent with *Travelers*. Indeed, *Gray* states, in dicta, that settlement agreements are improper once compensability has been established. 24 Ariz.App. at 501, 539 P.2d at 975. Nevertheless, *Gray*'s reasoning, stressing the difference between waivers and settlement agreements and the authority of the Commission to review settlement agreements, seems equally applicable to settlements before or after compensability is established.

### 3. *Jones v. Industrial Commission*

In *Jones*, compensability had been established, but the claimant and the insurance carrier disagreed over the extent of the claimant's lost earning capacity. They eventually agreed to stipulate to a certain percentage of lost earning capacity and the Commission accepted that stipulation. The parties' stipulation was, unsurprisingly, the product of a settlement agreement. That agreement, however, was not presented to the Commission until the claimant applied for commutation of her lost earning capacity award into a lump sum pursuant to A.R.S. § 23–1067. The parties had agreed that if the Commission refused to reduce the award to a lump sum, the percentage of the claimant's lost earning capacity would be adjusted upward. 114 Ariz. at 607–08, 562 P.2d at 1105–06.

In deciding whether to grant the claimant a lump-sum award, the Commission inquired about the underlying settlement agreement. The Commission's authority to consider the terms of the agreement was challenged on appeal. Thus, the court of appeals was presented with the precise issue raised in this case: "can the parties settle a disputed issue as to [lost earning capacity] by agreement?" 114 Ariz. at 609, 562 P.2d at 1107. *Jones* answered this question in the affirmative, holding that the "same considerations" leading to approval of pre-compensability compromise agreements, "are present with respect to lost earning capacity." 114 Ariz. at 610, 562 P.2d at 1108.

### B. *Resolution*

We believe the principles articulated in *Gray* and *Jones* should control this case. We are aware of the policy arguments supporting Professor Larson's view that settlements should not be allowed because compensation claims are elements of a scheme of social protection that neither employees nor employers should be allowed to bargain away.[5] The cogency of this argument,

---

5. *See* 3 A. LARSON, *supra* § 82.40, at 15–564 to –565:

[T]he public has enacted into law a scale of benefits [to] forestall ... destitution. It follows ... that the employer and employee

however, is largely lost in Arizona, because we already have recognized that employers and employees may settle claims by agreeing to lump sum payments before compensability has been established. *Gray, supra.* All we are left to decide is the question of whether the right or privilege of settlement disappears merely because compensability has been decided in the employee's favor. In this context, we believe the minority rule, allowing parties to settle their claims in the absence of an express statutory prohibition, to be appropriate for several reasons.

First, the plain language of A.R.S. § 23–1025 does not expressly prohibit settlement agreements; it prohibits employees from agreeing to "waive" their rights to compensation and from paying any portion of their employers' workers' compensation insurance premiums. We fail to see how an intelligent decision to settle one's claim can be termed a waiver of "rights to compensation." A.R.S. § 23–1025. In our view, settlements further, rather than prohibit, compensation and therefore do not violate the statute. *Gray,* 24 Ariz.App. at 502, 539 P.2d at 976. "The right to settle a claim ... after it has accrued is incidental to and necessarily included in the right of the claimant to assert his claim...." *State ex rel. Weinberger v. Industrial Commission,* 139 Ohio St. 92, 96, 38 N.E.2d 399, 401 (1941).

Second, once compensability has been established, and only the extent of disability is at issue, most of the policy reasons for refusing to recognize settlements disappear. As even Professor Larson acknowledges:

> The question is somewhat different when the compromise relates not to basic liability but to some fact question affecting only the amount payable.... The difference is that, when liability itself is in dispute, there are only two correct decisions possible under the Act: full liability

or nonliability; a partial payment must, therefore, be either an overpayment or an underpayment; but extent of disability is a judgment of degree, and a compromise within reasonable limits is an acceptable substitute for a Commission estimate based on conflicting testimony. Here it must also be recognized that there is almost invariably room for differences of opinion, and the compromise device, subject to Board approval, may forestall tedious and expensive litigation.

3 A. LARSON, *supra* § 82.43, at 15–566.

Having accepted in *Gray* the minority rule which allows parties to settle their claims before compensability has been determined, it is appropriate to adopt the full version of that rule, which allows parties, after compensability has been determined, to settle bona fide disputes as to the degree of disability, the extent of impairment, and the amount of compensation payable. In such circumstances, we believe settlement agreements are an "acceptable substitute for a Commission estimate based on conflicting testimony." 3 A. LARSON, *supra* § 82.43, at 15–566.

The primary objective of workers' compensation law "is to prevent [claimants] and [their] dependents from becoming public charges during the period of disability." *Prigosin v. Industrial Commission,* 113 Ariz. 87, 89, 546 P.2d 823, 825 (1976). If claimants are represented by competent counsel, settlement agreements usually will provide claimants with adequate compensation. Traditional tort claims often are settled successfully to the mutual benefit of plaintiffs and defendants. Although the workers' compensation system differs in important respects from traditional tort law, the effectiveness of settlement in the tort system attests to the ability of parties to accurately assess their own needs. Furthermore, settlement agreements avoid the long and expensive litigation that often ac-

have no private right to thwart this objective by agreeing between them on a disposition of the claim that may, by giving the worker less than this amount, make him a potential public burden. The public interest is also thwart-

ed when the employer and employee agree to a settlement which unnecessarily increases the cost of the product by giving the worker more than is due.

companies workers' compensation hearings.

This case provides an excellent example of the benefits of settlement agreements. Gabaldon settled her claim with Safeway for approximately $19,000. After the Commission rejected the settlement agreement, an ALJ held hearings to determine Gabaldon's lost earning capacity. Those hearings continued, intermittently, for three months. After considering the conflicting evidence, the ALJ performing administrative review ultimately determined that Gabaldon had suffered *no* lost earning capacity. The ALJ's findings reversed Gabaldon's previous award of 26.97 percent loss in earning capacity. Thus, Gabaldon was better off, and less likely to end up on public assistance, under her private settlement agreement, than she would have been under the workers' compensation system. Also, if the settlement agreement had been allowed to stand, thousands of dollars in attorney's fees and the cost (to society and the litigants) of several hearings before an ALJ could have been avoided.

Finally, we believe another important objective can be obtained by allowing post-compensability settlement. Once the validity of settlement agreements in workers' compensation cases is explicitly recognized, all such settlements will have to be made in the open, subject to Commission approval. As with pre-compensability settlement agreements prior to *Gray*, the only barrier to the Commission's jurisdiction over post-compensability settlement agreements was the court of appeals' interpretation of A.R.S. § 23–1025. Now that the *Travelers* barrier has been removed, the Commission can review settlement agreements accompanying stipulations regarding post-compensability issues. A.R.S. § 23–107(A)(3) ("The commission has full power, jurisdiction and authority to ... [p]romote the voluntary arbitration, mediation and conciliation of disputes between employers and employees."); *see Jones,* 114 Ariz. at 609–10, 562 P.2d at 1107–08; *St. Luke's Hospital v. Industrial Commission,* 114 Ariz. 118, 120, 559 P.2d 674, 676 (App.1976); *Gray,* 24 Ariz.App. at 503, 539 P.2d at 977.[6]

As all counsel agreed at oral argument, it is no secret that, even under *Travelers,* workers' compensation claims were routinely settled at all stages of the proceedings. Although the Commission refused to approve such settlements, it often accepted the parties' stipulations regarding, for example, lost earning capacity. It goes without saying that such stipulations were often, if not always, the product of settlement agreements. *E.g., Jones,* 114 Ariz. at 608, 562 P.2d at 1106. Why did the Commission approve stipulations in *Jones* and similar cases and adamantly refuse to accept the stipulation in this case? The answer is that in *Jones* the Commission apparently was not provided with a copy of the settlement agreement giving rise to the stipulation; in this case, a copy of the settlement agreement was inadvertently attached to the parties' stipulation and supplied to the Commission. In other words, the Commission often accepted stipulations regarding lost earning capacity so long as it was kept in the dark about the underlying settlement agreements. Thus, our decision today merely recognizes a common practice and brings settlement practices above the table, to be reviewed by the Commission.

## C. *Legislative Intent*

The Commission's final argument is that the legislature should address any proposal to alter *Travelers'* interpretation of A.R.S. § 23–1025. The Commission points to the legislature's failure to pass House Bill 2271, which would have amended A.R.S. § 23–1025 to explicitly allow settlements, as proof that the legislature intends § 23–

---

**6.** *Gray* held that A.R.S. § 23–107(A)(3) grants the Commission authority to review pre-compensability settlement agreements. Assuming that *Gray* was correct on this point, the same principles apply to post-compensability settlements. *See also* A.R.S. § 23–941(C) ("The presiding administrative law judge may dismiss a request for hearing when it appears to his satisfaction that the disputed issue or issues have been resolved by the parties.").

49

1025 to prohibit such settlements. We find this argument unpersuasive.

The Commission conceded at oral argument that House Bill 2271 was not presented to the full legislature. In fact, the bill was not even voted on in committee. 1984 J. of the House of Reps., at 1004. It is impossible to know whether the bill failed to clear committee because some legislators thought *Travelers* was correct or because the committee either did not consider the bill or assumed that this court had implicitly reversed *Travelers* in *Gray.* That a bill failed to reach the house floor for a vote indicates little, if anything, about legislative intent. *Cf. Summerfield v. Superior Court,* 144 Ariz. 467, 479, 698 P.2d 712, 724 (1985) ("to defer to some *assumed* legislative intent is to abdicate judicial responsibility"). The legislature's failure to act does not prevent this court from making an appropriate response.

CONCLUSION

We hold that disputed issues in workers' compensation claims may be the subject of settlement agreements until a final award is made.[7] *Travelers Insurance Co. v. Industrial Commission, supra,* is disapproved. The Commission's award is set aside. The decision of the court of appeals is vacated, and this case is remanded to the Industrial Commission.

HOLOHAN, C.J., GORDON, Vice C.J., and HAYS and CAMERON, JJ., concur.

7. After a final award is made, A.R.S. § 23–1067 governs all lump-sum commutations of the award.