972 P.2d 1005

**Jorge SANTIAGO, Petitioner,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Century Cable, Respondent Employer,**

**Sentry Insurance Company, Respondent Carrier.**

**No. 1 CA–IC 97–0147.**

Court of Appeals of Arizona, Division 1, Department E.

June 2, 1998.

Reconsideration Denied June 26, 1998.

Review Denied Feb. 25, 1999.

Barton L. Baker, Esq., Yuma, for Petitioner.

The Industrial Commission of Arizona by Anita R. Valainis, Chief Counsel Attorneys, Phoenix, for Respondent.

Cross & Lieberman, P.A. by Donald L. Cross and Lisa M. Ashbrook, Phoenix, for Respondents Employer and Carrier.

OPINION

GARBARINO, Judge.

¶ 1 This is a review of an Arizona Industrial Commission (Commission) award and decision upon review dismissing a rearrangement petition for lack of jurisdiction. The dispositive issue is whether the Commission's findings and order approving and adopting a settlement of a disputed claim for permanent disability compensation was an "award" that could be rearranged. We conclude that the findings and order constituted an "award"

and, therefore, the Commission had jurisdiction to rearrange it. We accordingly set aside the dismissal.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶ 2 In June 1992, Jorge Santiago (Claimant) injured his back while working as a cable installer. He filed a workers' compensation claim, which respondent carrier (Sentry) accepted. Medical treatment for this injury included two back surgeries. In March 1995, Sentry determined that Claimant had a permanent disability.

¶ 3 The Commission proceeded to assess Claimant's earning capacity. *See generally* Ariz.Rev.Stat. Ann. (A.R.S.) § 23–1047 (1995). The Commission ultimately issued an award, finding that Claimant could work as a security guard, entitling him to a monthly disability benefit of $144.41.[1]

¶ 4 Claimant timely protested the Commission's award. This protest nullified the Commission's award. *See Le Duc v. Industrial Comm'n,* 116 Ariz. 95, 98, 567 P.2d 1224, 1227 (App.1977).

¶ 5 Pending a hearing, Claimant and Sentry settled their dispute on or about December 12, 1995. The parties submitted their petition for approval of compromise and settlement agreement to the Commission. *See Safeway Stores, Inc. v. Industrial Comm'n,* 152 Ariz. 42, 46–49, 730 P.2d 219, 223–26 (1986); *see also* Ariz. Admin. Code R20–5–120 (Supp.97–4); ICA Policies and Procedures for Processing Compromise and Settlement Agreements (approved April 9, 1987; revised Sept. 24, 1987), *reprinted in* Ray J. Davis et al., Arizona Workers' Compensation Handbook App. C–7 to –10 (1993) (Commission's Policy).

¶ 6 In their written agreement, the parties represented that Sentry's position was that Claimant could work at his former job as a cable installer without loss of earning capacity. It appears that, to avoid litigation, Claimant agreed that he was "thus not enti-

---

1. All of the labor market evidence indicated that suitable work for Claimant would be light or sedentary. Sentry had recommended a monthly benefit of $39.09 based upon reasonably available light or sedentary work.

tled to the payment of any compensation for permanent partial or permanent total disability...." Sentry in turn agreed to pay Claimant $12,000.00, and reserved a credit of $19,481.93 against any future liability for disability compensation.[2] Finally, Claimant "acknowledge[d] that ... he may or may not be able to return to employment *of any type*" and he "expressly acknowledge[d] and assume[d] the risk that his expectations concerning his future ability to work *in any capacity* may be incorrect."[3] (Emphasis added). On December 20, 1995, an Administrative Law Judge (ALJ) approved and "adopted fully" the settlement in a document denominated, "FINDINGS AND ORDER APPROVING COMPROMISE AND SETTLEMENT AGREEMENT AND REIMBURSEMENT OF EXPENSES."

¶7 Claimant subsequently suffered a further injury and, on February 13, 1997, he filed a rearrangement petition under A.R.S. section 23–1044(F) (1995), claiming that his "earning capacity has [been] reduced since the award in this case" and that his "physical restrictions have become more limited." The Commission denied this petition, and Claimant timely requested a hearing.

¶8 Pending a hearing, Claimant submitted additional medical and labor market evidence. The medical evidence indicated that Claimant was capable of only "very sedentary-type work." The labor evidence indicated that suitable work was not reasonably available in the applicable geographic labor market.

¶9 At the ensuing hearing, the ALJ *sua sponte* questioned whether the Commission had jurisdiction to adjudicate a petition to rearrange a settled claim:

THE JUDGE: Before we start with any testimony, I want to clarify one thing here, gentlemen. In looking over this file, it raises a question in my mind, and you can educate me if you can on this. I don't see that this case has been reopened and then

reclosed since that compromising [sic] settlement. Is that right?

MR. CROSS: Correct.

MR. BAKER: Correct.

THE JUDGE: Okay. That raises a question in my mind as to the Commission's jurisdiction to consider any sort of rearrangement. I mean, I'm looking at a jurisdictional question here. It—rearrangement presumed that there is an existing award to be rearranged. And since the prior award was compromised and settled, there is no award to rearrange.

MR. CROSS: Right. My position was going to be essentially whatever had gone on before was Res [sic] judicata and there was nothing that you can do anything with. But this I will tell you: In my 30–some years of doing this, this is the first time I have incurred this kind of situation.

THE JUDGE: That is why I raise it, because I see a jurisdictional problem here. Now, I have no problem going forward with the applicant's testimony today. But I'm going to take his testimony provisionally. On 30 days from today I want legal memorandum submitted on the question of my authority to go forward on a rearrangement.

MR. BAKER: Okay. Just for the record, applicant's position that this was compromised was agreed he had no loss of earning capacity, although he did have a permanent impairment. And I think that it's our position that under those circumstances he would have, in essence, an award. The award is zero, but he's got a permanent impairment and that can be rearranged on proper showing.

¶10 Claimant proceeded to testify. He stated that he found minimum wage employment after being medically released to work. However, he reinjured his back in November 1995 and, as a result, lost his job in the first week of December 1995. He has not worked

---

**2.** The additional credit resulted from claimed overpayments of temporary disability compensation and advancements of permanent partial disability compensation.

**3.** This Court previously held that a contract could be rescinded for mutually mistaken as-

sumptions about future earnings. *See Dutton v. Industrial Comm'n*, 162 Ariz. 464, 465, 784 P.2d 290, 291 (App.1989) ("Because the administrative law judge failed to make a finding concerning whether the stipulation was based on a mutual mistake of fact, we set aside the award.")

since this second injury. Claimant also acknowledged having filed another workers' compensation claim for the second back injury and having eventually accepted a settlement from another carrier. Finally, Claimant testified that his current symptoms were about the same as they were when he settled his first injury claim, but that his symptoms were a little worse since the second injury.

¶ 11 After the parties submitted memoranda on the jurisdictional issue, the ALJ issued an award dismissing Claimant's rearrangement petition. The dispositive finding stated as follows:

> 3. The statute that allows for consideration of rearrangements assumes the existence of a Commission award that can be the subject of rearrangement. *See, A.R.S.* § 23–1044(F). The Commission's June 29, 1995, Findings and Award for Unscheduled Permanent Partial Disability was the subject of a Compromise and Settlement Agreement that was approved by the Commission in a Findings and Order entered on December 20, 1995. The effect of the foregoing is that there is presently no existing loss of earning capacity award in this case, and therefore, the Commission is without jurisdiction to consider applicant's petition for rearrangement. Accordingly, applicant's petition should be dismissed and the Commission's Findings and Order vacated.

¶ 12 The ALJ summarily affirmed on administrative review. Claimant timely petitioned for review. This Court has jurisdiction under A.R.S. section 12–120.21(A)(2) (1992) and A.R.S. section 23–951(A) (1995).

## DISCUSSION

¶ 13 On review, Claimant asserts that the ALJ erroneously dismissed his rearrangement petition for lack of jurisdiction. For the following reasons, we agree.

¶ 14 The Commission has statutory jurisdiction to rearrange a prior "award" for unscheduled disability compensation when a claimant's earning capacity has changed after the prior award:

> F. For the purposes of subsection C of this section, the commission shall, in accordance with the provisions of § 23–1047 when the physical condition of the injured employee becomes stationary, determine the amount which represents the reduced monthly earning capacity, and upon such determination make *an award of compensation which shall be subject to change in any of the following events:*
>
> 1. Upon a showing of a change in the physical condition of the workman subsequent to such findings and award arising out of the injury resulting in the reduction or increase of his earning capacity.
>
> 2. Upon a showing of a reduction in the earning capacity of the workman arising out of such injury where there is no change in his physical condition subsequent to the findings and award.
>
> 3. Upon a showing that his earning capacity has increased subsequent to such findings and award.

A.R.S. § 23–1044(F) (emphasis added).

¶ 15 During an earlier time when the Commission refused to approve post-compensability settlements, parties nevertheless secretly settled permanent disability disputes. The mechanism of settlement was a stipulated no-loss award and an undisclosed side agreement. *See, e.g., Safeway,* 152 Ariz. at 43–44, 48, 730 P.2d at 220–21, 225. Because the Commission entered a no-loss award, section 23–1044(F) potentially applied to these secret settlements.

¶ 16 Our Supreme Court removed the absolute prohibition of post-compensability settlements in 1986. *See id.* at 46–49, 730 P.2d at 223–26. One reason for this decision was that, in the future, the Commission would be able to review and approve settlements:

> [T]he Commission often accepted stipulations regarding lost earning capacity so long as it was kept in the dark about the underlying settlement agreements. Thus, our decision today merely recognizes a common practice and brings settlement practices above the table, to be reviewed by the Commission.

*Id.* at 48, 730 P.2d at 225.

¶ 17 The Commission implemented *Safeway* by adopting policies and procedures governing settlement agreements. *See* Commis-

sion's Policy. Among other things, these policies and procedures require an ALJ to: 1) approve or reject a settlement by written findings and order, *id.* at ¶ E, 2) provide for administrative review under A.R.S. sections 23–942 (1995) and 23–943 (1995) (governing administrative review of awards of ALJ), Commission's Policy ¶ F, and 3) provide for special action review under A.R.S. section 23–951 (1995) (governing special action review of awards and decisions upon review of ALJ), Commission's Policy, ¶ G.

¶ 18   We conclude that an ALJ's findings and order approving a settlement is the equivalent of an award. A findings and order approving a settlement is functionally the same as the Commission's adoption of a settlement containing a stipulated award. Furthermore, it is the Commission's policy to treat a findings and order approving a settlement as an award subject to appeal.[4]

¶ 19   In the current case, the ALJ dismissed Claimant's rearrangement petition solely because there was no prior award as required under A.R.S. section 23–1044(F). The ALJ erred because the findings and order approving the settlement operates the same as an award. Consequently, the ALJ incorrectly dismissed for lack of jurisdiction.

■   ¶ 20   We note that the rationale for the ALJ's dismissal would have applied generally to every settled permanent disability dispute. In its answering brief, Sentry for the first time[5] relied on the assumption of risk provision of this particular settlement agreement to justify the dismissal. This ar-

gument is belatedly presented for the first time in this special action. *See, e.g., Stephens v. Industrial Comm'n,* 114 Ariz. 92, 94, 559 P.2d 212, 214 (App.1977). Furthermore, even if Claimant could and did contract away his right to rearrange under A.R.S. section 23–1044(F)(2)[6], *cf. Cigna Health Plan v. Industrial Comm'n,* 168 Ariz. 118, 123, 811 P.2d 370, 375 (App.1991) (reserving whether a claimant could contract away right to reopen but requiring unambiguous expression of intent to do so), this contractual defense would not support dismissing the rearrangement petition for lack of jurisdiction.

## CONCLUSION

¶ 21   For the foregoing reasons, we set aside the award and decision upon review dismissing the rearrangement petition.

JAMES B. SULT, Presiding Judge, and THOMAS C. KLEINSCHMIDT, Judge, concur.

---

4. This treatment conforms to this Court's broad definition of "award" to mean "[a]ny formal written document in a matter adjudicating the right of a work[er] ... whether entitled a 'Commission action,' an 'order,' or an 'award,' and which contains a direct determination of some issue in relation to the claim of a particular injured work[er]...." *Meva Corp. v. Industrial Comm'n,* 15 Ariz.App. 20, 24, 485 P.2d 844, 848 (1971).

5. In its post-hearing memorandum regarding jurisdiction, Sentry cited *Dutton v. Industrial Comm'n,* 162 Ariz. 464, 784 P.2d 290 (App.1989), and generally argued that an approved settlement "should be entitled to res judicata effect." But the Commission would have jurisdiction to determine whether or not the rearrangement was

precluded. *Cf. Frazier v. Industrial Comm'n,* 145 Ariz. 488, 490–91, 702 P.2d 717, 719–20 (App. 1985) (distinguishing affirmative defense from jurisdictional defense).

6. Section 23–1044(F)(1) arguably would apply to rearrangement for changed functional limitations *related to the 1992 industrial injury,* and the assumption of risk provision doubtfully would apply to rearrangement for such changed functional limitations. *Cf. Tucson Steel Div. v. Industrial Comm'n,* 154 Ariz. 550, 555–56, 744 P.2d 462, 467–68 (App.1987) (distinguishing permanent impairment from functional limitations). If section 23–1044(F)(1) does apply, the ALJ erroneously assumed that Claimant had to reopen his claim before seeking rearrangement.