955 P.2d 11

**HOLSUM BAKERY, Petitioner Employer,**

**Argonaut Insurance Company, Petitioner Carrier,**

v.

**The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,**

**Ernest Garcia, Respondent Employee.**

**No. 1 CA–IC 96–0134.**

Court of Appeals of Arizona, Division 1, Department C.

June 19, 1997.

Review Denied May 19, 1998.*

Long, Lundmark & Poppe, P.A. by Melinda K. Poppe, Phoenix, for Employer and Carrier.

Anita R. Valainis, Chief Counsel by Laura L. McGrory, Phoenix, Industrial Commission of Arizona, for Respondent.

Taylor & Associates by Richard E. Taylor, Phoenix, for Employee.

## OPINION

TOCI, Judge.

This is a special action review of the decision of an Administrative Law Judge ("ALJ") rejecting a proposed settlement of supportive medical care benefits. The ALJ rejected the settlement agreement solely because it reserved a credit in favor of the carrier against any future supportive medical care benefits paid to the claimant. The principal issue is whether the Industrial Commission's policy statement disapproving settlements affecting future medical benefits accurately reflects the public policy of the Workers' Compensa-

---

* Jones, V.C.J., and Feldman, J., voted to hear oral    argument in this matter.

tion Act. We conclude it does not. Consequently, we set aside the ALJ's decision.

## I. PROCEDURAL AND FACTUAL HISTORY

In 1988, respondent employee Ernest Garcia ("claimant") injured his back at work. Petitioner carrier ("Argonaut") accepted compensability. Over the next five years, claimant had numerous back surgeries, and the parties twice litigated reopening the claim. In 1995, Argonaut closed the claim, and claimant protested the closure.

In 1996, the parties settled the termination dispute. Claimant stipulated that he was medically stationary and had a permanent impairment but no loss of earning capacity. In exchange, Argonaut agreed to pay him $40,000 and reserved a dollar-for-dollar credit in this amount against any future temporary or permanent disability compensation. An ALJ approved this settlement, but the parties continued to dispute the claimant's need for supportive care.

The parties then settled the supportive care claim. In exchange for claimant's stipulation that he did not require supportive care, Argonaut agreed to pay him $10,000 and reserved a dollar-for-dollar credit in this amount against any future supportive care for him. The parties again petitioned the ALJ for approval of a compromise and settlement of claims.

The ALJ asked the parties to revise the proposed settlement because she could not "approve a credit against future medical benefits for compensable conditions." The parties then documented a medical conflict over whether claimant required supportive care. The ALJ again informed the parties that she could not "approve a credit against medical benefits, even if they pertain to supportive care."

The parties submitted a revised agreement. The agreement relied on the documented medical conflict and stated that claimant "now has Medicare benefits available to him. Therefore, he has an alterna-

tive source for coverage of his medical expenses." The revision, however, did not modify the credit provision. The ALJ rejected the proposed settlement because "defendants took a *credit against future supportive medical benefits for compensable conditions.*" (Emphasis added). Argonaut requested administrative review, and the ALJ summarily affirmed her decision. This special action followed.

## II. DISCUSSION

On review, Argonaut[1] asserts that the ALJ improperly relied on the Commission's policy against settlement of future medical benefits in rejecting the settlement. According to Argonaut, the policy is procedurally invalid and inconsistent with the public policy underlying Arizona workers' compensation law. We agree that the Commission's policy is inconsistent with the public policy underlying workers' compensation.

In 1987, the Commission adopted policies and procedures governing settlement agreements. *See* ICA Policies and Procedures for Processing Compromise and Settlement Agreements (approved Apr. 9, 1987; revised Sept. 24, 1987), *reprinted in,* Ray J. Davis et al., *Arizona Workers' Compensation Handbook* App. C–7 to –9 (1993) ("Commission's policy"). In relevant part, the Commission's policy states that an ALJ shall review the proposed settlement agreement and claims file. *Id.* ¶ C. Further, the ALJ shall approve the proposed agreement "[i]f a bona fide dispute exists; the claimant has read and understands the agreement;" and, "[n]o coercion, duress, fraud, misrepresentations, or undisclosed additional agreements" were used to achieve the settlement. *Id.* ¶ D. Finally, the policy substantively limits permitted settlements. It provides:

> Unless the ... Agreement involves compensability or the causal relationship of a particular medical condition, a Compromise and Settlement Agreement *has no prospective effect on any future medical, surgical or hospital benefits which may be*

---

1. Although claimant is a nominal respondent, he has concurred with Argonaut's position. The Commission has filed an answering brief and has standing as an advocate in this case. *See generally Evertsen v. Industrial Comm'n,* 117 Ariz. 378, 380–82, 573 P.2d 69, 71–73 (App.1977).

*awarded in a subsequent reopening of the claim.*

*Id.* ¶ I (emphasis added.) We examine the binding nature of this Commission policy.

## A. Commission's Policy Not a Rule

■ Although the Commission concedes that its policy did not comply with statutory rule making procedures, it contends that the policy constitutes a substantive policy statement. See Ariz.Rev.Stat. Ann. ("A.R.S.") § 41–1001(21) (Supp.1996) (defining "substantive policy statement"). Even if we assume that the Commission's policy is a substantive policy statement that applies here, it does not help the Commission. By definition, a substantive policy statement is advisory only. *Id.* Consequently, the ALJ could not rely on the policy statement in rejecting the proposed settlement.

The Commission contends, however, that the ALJ did not rely directly on the Commission's policy. The Commission argues instead that its policy merely "reflects the Commission's opinion of the Arizona Constitution and case law declaring the public policy underlying the Workers' Compensation Act." Furthermore, the Commission asserts that public policy "does not support the use of a credit against an applicant's right to receive future medical benefits for a condition that is not presently in dispute." [2] Thus, according to the Commission, the ALJ actually enforced the public policy underlying the Workers' Compensation Act.[3]

Assuming that the ALJ did not directly rely on the Commission's policy,[4] the dispositive question is whether the Commission's policy accurately reflects the public policy of the Workers' Compensation Act. We now turn to that issue.

**2.** As noted, the parties did dispute whether claimant currently was entitled to supportive care.

**3.** The Commission's argument therefore concedes that its policy is advisory only.

**4.** The ALJ did not actually cite the policy to support the rejection of the proposed settlement, but she cited no other authority to support this finding.

## B. Commission's Policy is Inconsistent with Policy Underlying Workers' Compensation Act

■ Although the Commission has historically rejected settlements of workers' compensation claims,[5] our court has concluded that the Commission has jurisdiction to approve settlements of compensability. *See Gray v. Industrial Comm'n,* 24 Ariz.App. 499, 499–500, 539 P.2d 973, 974–75 (1975). After *Gray,* we permitted the Commission to approve pre-compensability settlements but not post-compensability settlements. *Travelers Ins. Co. v. Industrial Comm'n,* 21 Ariz. App. 298, 299, 518 P.2d 1015, 1016 (1974) ("post-compensability" refers to claims that the Commission has accepted as compensable). *But cf. Jones v. Industrial Comm'n,* 114 Ariz. 606, 610, 562 P.2d 1104, 1108 (App. 1977) (extending *Gray* to settlement of lost earning capacity but concluding that Commission could reject lump sum commutation as condition of settlement). Thereafter, in *Safeway,* our supreme court reviewed the cases involving settlements of workers' compensation claims and examined the objectives underlying those settlements. 152 Ariz. at 45–48, 730 P.2d at 222–26. It then removed the absolute prohibition against post-compensability settlements. *Id.* at 47, 730 P.2d at 224.

To support its claim that settlement agreements may include credits against future medical benefits, Argonaut focuses on *Safeway's* broad holding that parties may settle disputed issues in workers' compensation claims. *See id. Safeway* adopted the minority rule "which allows parties, after compensability has been determined, to settle bona fide disputes *as to the degree of disability, the extent of impairment, and the amount of compensation payable,*" *id.* at 47, 730 P.2d at

**5.** A court may choose to reject such a settlement because a private agreement between employer and employee disposing of the claim may result in the employee becoming a public charge. Likewise, the public interest is thwarted where employer and employee agree to give employee more than he is due. *Safeway Stores, Inc. v. Industrial Comm'n,* 152 Ariz. 42, 46–47 n. 5, 730 P.2d 219, 222–24 n. 5 (1986) (citing 3 Arthur Larson, *The Law of Workmen's Compensation* § 82.52).

224 (emphasis added), and held that *"disputed issues* in workers' compensation claims may be the subject of settlement agreements until a final award is made." *Id.* at 49, 730 P.2d at 226 (emphasis added) (footnote omitted).[6] The settlement agreement in *Safeway* reserved a credit only against future permanent disability compensation. *Safeway Stores, Inc. v. Industrial Comm'n,* 152 Ariz. 37, 38, 730 P.2d 214, 215 (App.1985), *vacated,* 152 Ariz. 42, 730 P.2d 219 (1986). The court did not determine whether in settling a current dispute, the parties could agree to a credit against future medical benefits.

*Safeway* rejected the Commission's policy arguments against allowing post-compensability settlements of disability benefits. 152 Ariz. at 46–48, 730 P.2d at 223–25. The Commission makes similar policy arguments here to support its position that credits against future medical benefits are prohibited.[7] Unless a different settlement policy should apply to medical benefits than applies to disability benefits, *Safeway* should be extended to the current case. We now turn to these policies.

First, we note that the court in *Safeway* acknowledged, but did not adopt, the argument that employees should not be permitted to "bargain away" protection because they risk becoming public charges. *Id.* at 46–47 & n. 5, 730 P.2d at 223–24 & n. 5. Although we agree that the purpose of workers' compensation law is to prevent workers from becoming public charges, we conclude that settlement of their claims, like settlement of tort claims, meets this objective. *See id.* Claimants who enter settlement agreements are generally represented by counsel whose function is to protect the claimants' interests and assure a fair settlement. *See id.* Furthermore, the Commission must approve of any settlement. *Id.* at 48, 730 P.2d at 225. And, with a private settlement agreement, a claimant may be better off and less likely to need public assistance than if the claimant must rely solely on workers' compensation. *See id.*

*Safeway* cited other policies that apply equally to the settlement of future medical benefits. First, there is no express statutory prohibition against such agreements. *Id.* at 47, 730 P.2d at 224. Although A.R.S. section 23–1025 prohibits *waiver* of compensation rights, it does not preclude claimants from *settling* their individual claims. *Id.* Second, settlement agreements avoid litigation expenses and reduce attorney's fees. *Id.* at 47–48, 730 P.2d at 224–25. Finally, good faith disputes may exist over a claimant's current entitlement to medical benefits.

In recent years, we have endorsed settlement of bona fide disputes in workers' compensation context. *See A.J. Goulder Elec. v. Industrial Comm'n,* 187 Ariz. 263, 268–69, 928 P.2d 687, 692–93 (App.1996). Because a settling claimant need only prove a subjective worsening to obtain future medical benefits, a credit against future benefits may be a necessary condition to the settlement of such disputes. *See Stewart v. Industrial Comm'n,* 187 Ariz. 58, 60, 926 P.2d 525, 527 (App.1996); *see also* A.R.S. § 23–1061(H) (1995) (worker may file petition to reopen claim where new, additional, or previously undiscovered temporary or permanent condition arises). The practical consequence of an absolute rejection of credits against future medical benefits is that no rational employer or carrier would settle bona fide disputes.

We acknowledge that settlements of disability benefits, like the one in *Safeway,* differ from settlements affecting future medical benefits. As Larson has said:

> A settlement ordinarily stops only the claimant's rights to ... income benefits and does not affect his or her rights to future medical benefits.... This strictness is well justified, since it is difficult to imagine why it should ever be in the best interests of a claimant to bargain away his or her rights to future medical treatment for a lump sum. After all, how can unknown future medical costs be subjected to commutation on an actuarial basis? It is

---

**6.** The court noted that lump sum commutations of final awards are governed by A.R.S. section 23–1067.

**7.** The Commission, for example, argues that a credit constitutes a prohibited waiver of medical benefits. It also argues that injured workers likely will dissipate settlement proceeds and may not receive the necessary treatment or alternatively may require public assistance.

significant that the ... [model] compensation law does not permit even its strictly controlled application of lump-summing to be applied to medical benefits.

3 Arthur Larson, *supra*, § 82.52 at 15–1221 to –1224. We note, however, that the legislature could have, but did not, adopt a statute prohibiting settlements affecting future medical benefits. *See* Fla. Stat. Ann. § 440.20(12)(a–c)(West 1991) (amended by Fla. Stat. Ann. § 440.20)(11)(a–c)(West Supp. 1997). Because the legislature has not enacted such a law, we are bound by case law on this issue. *See Brewster v. Cooley & Assoc.*, 116 N.M. 681, 866 P.2d 409, 413–14 (Ct.App. 1993) (court interpreting workers' compensation legislation that did not bar credits against future medical benefits permissible based on public policy and case law).

Furthermore, Larson's analysis equates settlement with commutation, but under Arizona law, settlement differs from commutation. *See Safeway*, 152 Ariz. at 49 n. 7, 730 P.2d at 226 n. 7. Commutation is governed by statute and applies only to final awards for permanent disability benefits. *See* A.R.S. § 23–1067; *see also* Arizona Administrative Code R20–5–121, –122 (calculation of commuted award and criteria for commutations). By contrast, settlements are governed by case law, but as noted, prior cases have not specifically addressed whether settlements may affect future medical benefits.

We reject the Commission's broad assertion that it violates the public policy of the Workers' Compensation Act to allow a credit against a claimant's right to receive future medical benefits for a condition not presently in dispute. We see little difference in principle between this settlement and the settlement approved by our supreme court in *Safeway*. Here, the claimant bargained away his claim for supportive medical care with a credit to the carrier against any future award of such care. In *Safeway*, the claimant bargained away her claim for lost-earning capacity with a credit to the carrier in the event of

reopening. 152 Ariz. at 44, 730 P.2d at 221. Had the claimant in *Safeway* become disabled and successfully reopened to assert a claim for lost-earning capacity, the award would have been reduced by the amount of the credit. Here, should claimant seek a future award of supportive medical care, the award would be subject to a credit in favor of Argonaut. Thus, in the case of additional proceedings, claimant's position is no worse than that of the claimant in *Safeway*.

### III. CONCLUSION

We conclude that a credit against future medical benefits does not alone invalidate a settlement agreement. We also find that the Commission's policy does not accurately reflect the public policy of the Workers' Compensation Act.[8] We therefore set aside the ALJ's decision rejecting the settlement of supportive care benefits.

GERBER, P.J. and SULT, J., concur.

---

**8.** We do not address whether the Commission may, consistent with *Safeway*, require reasonable limitations on credits against future medical benefits. For example, the Commission arguably might limit credits to specified conditions or treatments, which would protect claimants against unforeseen medical complications. *Cf.*

*Time, D.C. Freight Lines v. Industrial Comm'n*, 148 Ariz. 117, 120–21, 713 P.2d 318, 321–22 (App.1985) (allowing prorated credit when commuted claim reopened); *Brewster*, 866 P.2d at 413–14 (policy against double recovery requires offset for benefit previously paid).