963 P.2d 310

SCHUCK & SONS CONSTRUCTION,
Petitioner Employer,

Alexsis, Inc., Petitioner Carrier,

v.

The INDUSTRIAL COMMISSION
OF ARIZONA, Respondent,

Gary Sinclair, by Joyce Sinclair, his
widow, Respondent Employee.

No. 2 CA–IC 97–0011.

Court of Appeals of Arizona,
Division 2, Department B.

· Jan. 29, 1998.

Review Denied Sept. 24, 1998.

Bury, Moeller, Humphrey & O'Meara by J. Michael Moeller and Pamela Treadwell–Rubin, Tucson, for Petitioner Employer and Petitioner Carrier.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, for Respondent.

Tretschok, McNamara, Patten & Lohmann, P.C., by Carol L. Lohmann, Tucson, for Respondent Employee.

## OPINION

PELANDER, Presiding Judge.

¶1   In this workers' compensation case, the employee/claimant Gary Sinclair and the employer/carrier Schuck & Sons Construction executed and filed with the Industrial Commission a compromise and settlement agreement for a lump sum compensation payment, which the Commission later approved despite Sinclair's intervening death and Schuck's attempted withdrawal from the settlement on that basis.  In this statutory special action, Schuck challenges the administrative law judge's (ALJ) award approving the agreement.  We affirm the award.

## BACKGROUND

¶2   The underlying facts are undisputed. Sinclair was injured while in the course of his employment on December 12, 1992.  The injury required surgical repair of his right shoulder.  The carrier accepted the claim for benefits, and the claim was later closed with a five percent unscheduled permanent partial

disability. The Commission issued an award for unscheduled permanent partial disability in April 1994, finding a loss of earning capacity and awarding Sinclair $504.27 per month. The award became final.

¶3 Sinclair later sought a lump sum settlement. In July 1996, Sinclair and Schuck executed a Notice of Compromise and Settlement Agreement, which Schuck had drafted and which provided in part:

> 8. That there is currently a legitimate dispute as to whether Applicant's injury on December 12, 1992 resulted in a loss of earning capacity. . . .
>
> 9. That the parties ... have compromised the disputed issues relating to the existence or amount of any loss of earning capacity that he may have suffered referable to such injury, and in consideration of the sum of THIRTY THOUSAND DOLLARS ($30,000.00), they agree that the Applicant has not suffered a loss of earning capacity, and further, they hereby acknowledge, agree, covenant and promise as follows:
>
>> First, that the Applicant shall not question the validity of this compromise.
>>
>> Second, that the aforesaid sum may be treated by [Schuck] as an overpayment of disability compensation and that [Schuck] may, in accordance with this agreement, have a credit in the sum of $30,000.00 against any liability they might ever subsequently incur for permanent partial or permanent total disability compensation benefits, and [Schuck's] credit against such a liability shall not commence exhaustion until and unless Applicant has established a new, additional or previously undiscovered disability warranting reopening ... or rearrangement. . . .

¶4 Schuck filed the fully executed agreement with the Commission on July 23, 1996, and, by letter, requested an ALJ to approve it. Before the Commission approved the agreement and before Schuck disbursed any settlement proceeds, however, Sinclair died on August 4 from causes unrelated to the industrial injury. Schuck's counsel notified the ALJ on August 9 that, in view of Sinclair's death, Schuck no longer authorized the settlement and was withdrawing its settlement authority. Sinclair's widow was appointed personal representative of his estate in September. After the parties submitted legal memoranda, the ALJ approved the settlement agreement in November and later affirmed the award on administrative review.

## DISCUSSION

¶5 This case presents a dilemma. It is clear that, if the ALJ had approved the settlement agreement before Sinclair died, it would have been valid, binding, and enforceable by his estate against Schuck despite Sinclair's subsequent death. Schuck does not contend otherwise. It is equally clear, however, that in the absence of a settlement agreement, Sinclair's estate would not have been entitled to any future loss of earnings or disability compensation benefits after his death, except for any accrued compensation payable at the time of his death. *See* A.R.S. §§ 23–1044(C), 23–1068(B); *Reed v. Industrial Comm'n*, 104 Ariz. 412, 454 P.2d 157 (1969); *Parker v. Walgreen Drug Co.*, 63 Ariz. 374, 162 P.2d 427 (1945).

¶6 The issue is whether a compromise and settlement agreement is valid and enforceable when all parties have signed it and it has been filed with the Commission, but, prior to the ALJ's approval of it, the claimant dies and the employer/carrier withdraws its consent to settlement. The issue is one of law, which we review *de novo. Jaimes v. Industrial Comm'n*, 163 Ariz. 307, 787 P.2d 1103 (App.1990).

¶7 Parties to workers' compensation cases may, "after compensability has been determined, ... settle bona fide disputes as to the degree of disability, the extent of impairment, and the amount of compensation payable." *Safeway Stores v. Industrial Comm'n*, 152 Ariz. 42, 47, 730 P.2d 219, 224 (1986). Such settlement agreements, however, are "subject to Commission approval." *Id.* at 48, 730 P.2d at 225. *See also Rustin v. Industrial Comm'n*, 184 Ariz. 476, 910 P.2d 627 (1996). In addition, a Commission rule provides that "[n]o settlement agreement, compromise, or waiver of rights of a work-

ers' compensation claim, will be valid unless approved by the Commission."[1] Ariz.Admin.Code R20–5–120(A) (1996).

¶ 8 Relying on that rule, Schuck contends the settlement agreement "was not yet approved and therefore not yet valid when Sinclair died." Thus, it asserts, "there was *never* a valid agreement under Arizona law[,] [w]hat the ALJ attempted to approve was a nullity, and therefore[,] he was without jurisdiction to do so." We reject those contentions for several reasons.

■■■ ¶ 9 First, although Rule 20–5–120(A) conditions a settlement agreement's validity on Commission approval, that approval ultimately was given, albeit after Sinclair's death. Schuck's contention that a settlement agreement is invalid "until" the Commission has approved it is contrary to the rule's actual language that no such agreement is valid "unless approved by the Commission." The rule does not say that, when a settlement agreement has been fully executed and submitted to the Commission for approval and the employee then dies, the agreement is automatically and forever invalid unless the ALJ approved it before the employee's death. Nor does the rule permit one of the contracting parties, like Schuck, to unilaterally withdraw from, or rescind, the settlement agreement prior to the Commission's approval.[2]

■■■ ¶ 10 Second, "[t]he validity and enforceability of stipulations and settlement agreements in workers' compensation cases must be determined according to contract principles." *Pacific Western Const. v. Industrial Comm'n,* 166 Ariz. 16, 19, 800 P.2d 3, 6 (App.1990). *See also Field v. Industrial*

*Comm'n,* 137 Ariz. 257, 669 P.2d 1034 (App. 1983). Under those principles, "the scope and criteria of the commission's review of a settlement is whether at the time of the settlement there was a genuine and bona fide dispute between the parties regarding the issue of lost earning capacity and whether good grounds existed to justify the settlement." *Pacific Western,* 166 Ariz. at 17, 800 P.2d at 4. *See also Employers Mut. Liab. Ins. Co. v. Industrial Comm'n,* 121 Ariz. 558, 592 P.2d 392 (App.1979) (Commission should approve settlement once it determines that genuine and bona fide dispute exists and that settlement was fairly entered into and is free from fraud, deceit, misrepresentation, mistake and overreaching).

¶ 11 Indeed, the Commission's resolution policies, adopted in 1987, curtail an ALJ's discretion to disapprove a settlement agreement by providing that the ALJ will approve agreements if (1) a genuine dispute exists, (2) the applicant has read and understands the agreement's terms, and (3) the ALJ finds no coercion, duress, fraud, misrepresentations, or undisclosed additional agreements were used to achieve the settlement.[3] The ALJ had no grounds to disapprove the agreement on any of those bases and, in accordance with the Commission's policies, made all pertinent findings required to approve the settlement agreement here.

■■■ ¶ 12 Third, that Sinclair's estate would not have been entitled to any future compensation benefits in the absence of the settlement neither invalidates the agreement nor precluded the ALJ's approval of it. We do not find A.R.S. § 23–1068(B) prohibits enforcement of the agreement in this context.[4] Neither it nor *Parker* and *Sorenson v.*

---

1. The Commission is statutorily authorized to adopt rules and regulations to effect its purposes. A.R.S. §§ 23–107(A)(1), 23–921(B); *McDuffee v. Industrial Comm'n,.* 15 Ariz.App. 541, 489 P.2d 1243 (1971).

2. We also note that Rule 20–5–120, viewed in its entirety, generally is geared towards protecting employees. For example, acceptance of any settlement payments or signing of a settlement agreement, unless approved by the Commission, shall not release the employer or its carrier from any obligation imposed by the Workers' Compensation Law. Ariz.Admin.Code R20–5–120(B) (1996). Similarly, neither the employer nor the

carrier is entitled to a credit for any monies paid to an employee under a settlement agreement that has not been approved by the Commission. R20–5–120(C).

3. Arizona Workers' Compensation Handbook § 11.5 (1996), *citing* Procedures Manual, Claims Division, Industrial Commission of Arizona, subsection D (1st ed. 1990).

4. Section 23–1068(B) reads in part: "Compensation ... shall not pass to another person by operation of law, except that the amount of compensation payable to a person at the time of

*Six Companies, Inc.,* 53 Ariz. 83, 85 P.2d 980 (1939), which Schuck also cites and which (like *Parker*) was decided under a different-ly-worded predecessor statute, addresses compromise and settlement agreements approved by the Commission.

¶ 13 Fourth, we find the out-of-state cases Schuck cites inapposite or unpersuasive. Although one court found the unpaid portion of a lump sum award "does not survive the employee's death unless the award has been reduced to a final judgment or has otherwise been fully matured," the amount of the award was completely unresolved when the claimant died, and the case did not involve a fully executed and approved settlement agreement. *Carswell v. Aetna Cas. & Sur. Co.,* 598 S.W.2d 20, 21–22 (Tex.Civ.App. 1980). More on point are *Trahan v. Liberty Mutual Insurance Co.,* 188 So.2d 435 (La. App.1966), and *Sherlin v. Liberty Mutual Insurance Co.,* 584 S.W.2d 455 (Tenn.1979). In *Trahan,* the court held that an agreement to compromise

> did not vest any right in the claimant or his heirs to recover [the settlement] sum, for an agreement between an employer and his disabled employee to compromise or make a lump-sum payment of a workmen's compensation claim is unenforceable unless the agreement is approved by the court as required by statute.

*Trahan,* 188 So.2d at 436. Based on a Tennessee statute "as it has been consistently interpreted by decisions of this Court over the past 55 years,"[5] *Sherlin,* 584 S.W.2d at 459, the court in *Sherlin* concluded that a "lump sum settlement agreement never became binding on any of the parties because it

was not approved by the court prior to the death of the employee." *Id.* at 456.

¶ 14 Although it did not cite any cases, the court in *Sherlin* acknowledged "respectable authority from other jurisdictions which tend[s] to support" a contrary conclusion. *Id.* at 458. For example, based on facts analogous to this case, the New Mexico Supreme Court precluded an employer/carrier from repudiating a lump sum compensation settlement agreement after the employee/claimant had died and before the agreement had been approved.[6] *Rojo v. Loeper Landscaping, Inc.,* 107 N.M. 407, 759 P.2d 194 (1988). In so holding, the court stated:

> The contention that a workers' compensation agreement ... may be rescinded because the offeree died after acceptance but before payment had been approved is without support in any law to which we have been referred. By agreeing to the lump sum settlement, [the carrier] gambled that the claimant might live for the entire periodic payment period, and it thus took the risk that the lump sum settlement would reduce the total benefits that it would have had to pay if, instead, it were to continue making those periodic payments. Periodic payments admittedly would have ceased upon the death of the claimant. But that death will not occur is also a risk taken by a carrier when it offers to settle long-term compensation payments for a lump sum in order to be released from liability for future payments. We assume that [the carrier] weighed those considerations in reaching its agreement with decedent. Although from [the carrier's] perspective it is unfortunate that claimant died after the oral agreement had been formally executed by both parties, in

death, whether payable in periodic payments or converted to a lump sum, ... shall, after his death, be paid to his personal representative...." Unlike prior versions of § 23–1068, which allowed lump sum payments to a personal representative of " 'the amount of compensation payable to a person at the time of his death *pursuant to an award of the commission,*' " *Parker,* 63 Ariz. at 376, 162 P.2d at 428, *quoting* Ariz.Code Ann. § 59–962 (1939) (emphasis added), the current version of the statute no longer limits compensation payable at death to that recoverable under an award of the Commission.

5. Tenn.Code Ann. § 50–1006 provided in part that "all settlements, before the same are binding on either party, shall be reduced to writing and shall be [court] approved...." *Sherlin,* 584 S.W.2d at 457.

6. The pertinent New Mexico statute provided that "amounts payable as workers' compensation may be converted to a lump sum settlement by agreement of the parties and after the agreement is approved by the hearing officer." *Rojo v. Loeper Landscaping, Inc.,* 107 N.M. 407, 759 P.2d 194, 196 (1988), *citing* N.M.Stat.Ann. § 52–5–14(B) (1978).

the absence of mutual mistake of fact, fraud, failure to express the agreement of the parties, or material breach by the other party, claimant's death does not provide grounds to allow [the carrier's] rescission of the contract.

*Id.* 759 P.2d at 197 (citations omitted).

¶ 15 We find that reasoning persuasive and adopt it. *See also B. Frank Joy Co. v. Isaac,* 333 Md. 628, 636 A.2d 1016 (1994) (upholding commission's approval of settlement agreement on which employer attempted to unilaterally renege after claimant died and before agreement approved, even though agreement not binding on parties until commission approval). Contrary to Schuck's suggestion, Commission approval of the settlement agreement, before Sinclair's death and Schuck's attempted repudiation, was not a "condition precedent required for enforcement of the agreement." Had Schuck intended that, it could and should have so specified in the agreement that it drafted. Rather, "[t]he potential lack of approval by the [Commission], which would have relieved the parties of their obligations under the agreement but did not occur, is simply a 'condition subsequent' which 'is not a valid basis for concluding that the contract is not presently binding and effective.'" *Frankel v. Board of Dental Examiners,* 46 Cal. App.4th 534, 54 Cal.Rptr.2d 128, 131 (1996), *quoting Hoover Comm. Hotel Corp. v. Thomson,* 167 Cal.App.3d 1130, 213 Cal.Rptr. 750, 756 (1985).

¶ 16 Finally, we find no bar to the ALJ's exercise of jurisdiction in approving the settlement agreement after Sinclair's death. The Commission "has full power, jurisdiction and authority to ... [p]romote the voluntary arbitration, mediation and conciliation of disputes between employers and employees." A.R.S. § 23–107(A)(3). Schuck cites no pertinent authority, nor have we found any, suggesting that the ALJ exceeded his jurisdiction by approving the settlement agreement under the circumstances of this case.[7]

7. Contrary to Schuck's suggestion, although the ALJ cited *Oceanic Butler, Inc. v. Nordahl,* 842

## DISPOSITION

¶ 17 We affirm the award of November 19, 1996.

ESPINOSA and HOWARD, JJ., concur.

F.2d 773 (5th Cir.1988), in his award, he relied primarily on Arizona law to support his decision.