47 P.3d 1156

Howard J. TABLER, III., Petitioner,

v.

The INDUSTRIAL COMMISSION OF ARIZONA, Respondent,

Schuck & Sons Construction, Respondent Employer,

RSKCO, Respondent Carrier.

No. 1CA–IC 01–0012.

Court of Appeals of Arizona, Division 1, Department C.

June 18, 2002.

Redesignated as Opinion and Publication Ordered June 18, 2002.

Schiffman Law Office, P.C., By Alan M. Schiffman and Robert E. Wisniewski, Phoenix, Attorneys for Petitioner Employee.

Anita R. Valainis, Chief Counsel, The Industrial Commission of Arizona, Phoenix, Attorney for Respondent.

Cross & Lieberman, P.A., By Lisa M. LaMont, Phoenix, Attorneys for Respondents Employer and Carrier.

## OPINION

GEMMILL, Judge.

¶ 1 May an oral compromise and settlement agreement be approved by the Industrial Commission of Arizona (ICA) and enforced against the employer and carrier, even though the claimant died before a written compromise and settlement agreement ("C & S") was executed? We answer this question in the affirmative and set aside a decision upon review declining to approve a C & S.

### Facts and Procedural History

¶ 2 On July 31, 2000, the attorneys for the parties orally agreed to settle Howard Tabler's workers' compensation claim as non-compensable for $55,000. Tabler's attorney, Robert Wisniewski, faxed a confirmation to attorney Lawrence Lieberman, who represented employer Schuck & Sons Construction and carrier RSKCO (collectively "Employer"). Wisniewski also sent a fax to the Administrative Law Judge ("ALJ"), informing her of the settlement and the anticipated filing of a written C & S for her review and approval, and requesting that the hearing set two days later on the issue of compensability be cancelled. The ALJ vacated the August 2, 2000 compensability hearing and each party released its witnesses.

¶ 3 On August 27, 2000, attorney Lieberman forwarded the written C & S he had prepared. Attorney Wisniewski had discussed the terms of the agreement with Tabler, and Wisniewski expected Tabler to sign it. However, on September 6, 2000, a few hours before he was scheduled to meet with Wisniewski to read and sign the C & S, Tabler died in an automobile accident. When Wisniewski informed Lieberman of Tabler's death, Lieberman indicated that Employer would not want to go through with the settlement since Tabler was no longer alive to sign it.

¶ 4 Wisniewski filed a request for approval of the C & S and also initiated the appointment of Tabler's mother, Linda, as personal representative of Tabler's estate. Upon her appointment, Linda Tabler signed the C & S, which Wisniewski submitted for the ALJ's approval. Neither Lieberman nor any other representative of Employer had signed the C & S. Employer opposed the approval of the C & S, claiming that an oral agreement in this context does not become final and enforceable until it is reduced to writing and signed by the parties.

¶ 5 After hearing testimony from the two attorneys and considering legal memoranda, the ALJ issued her decision upon review.[1] She confirmed Linda Tabler's appointment as personal representative of Tabler's estate for workers' compensation purposes, made various factual findings and legal conclusions, and declined to approve the C & S. This special action followed.

### Discussion

■ ¶ 6 The enforceability of settlement agreements in workers' compensation claims is resolved under contract principles. *Schuck & Sons Constr. v. Indus. Comm'n*, 192 Ariz. 231, 234, ¶ 9, 963 P.2d 310, 313 (App.1998); *Pac. W. Constr. Co v. Indus. Comm'n*, 166 Ariz. 16, 19, 800 P.2d 3, 6 (App.1990). In *Schuck & Sons*, Division Two of this court held that when the parties have signed a written C & S, the applicant's death prior to approval is not an automatic bar to the ALJ's approval of the C & S. 192 Ariz. at 236, ¶ 15, 963 P.2d at 315. Unless the terms of the agreement specify otherwise, the employer assumes the risk of the applicant's unexpected death when it negotiates the settlement of a claim that otherwise would have the potential of long-term payments. *Id.* at 235–36, 963 P.2d at 314–15 (citing *Rojo v. Loeper Landscaping, Inc.*, 107 N.M. 407, 759 P.2d 194 (N.M.1988)).

¶ 7 While in *Schuck & Sons* the claimant died after the C & S had been signed but prior to ICA approval of the C & S, here Tabler died before the parties executed their C & S and then the ALJ declined to approve it. Thus, the present case presents a legal question not answered by *Schuck & Sons*: May an oral compromise and settlement agreement be approved by the ICA and enforced against the employer and carrier even though the applicant died before a written C & S was executed? This case also presents the factual question whether the parties intended the oral agreement to be binding and enforceable at that time, with the subsequent written C & S merely a memorialization of the oral agreement.

■ ¶ 8 For an enforceable contract to exist, there must be an offer, acceptance, and consideration. *Rogus v. Lords*, 166 Ariz. 600,

---

1. The full title of the decision upon review is "Decision Upon Review Setting Aside Findings and Award Dismissing Request For Hearing Rejecting Compromise and Settlement Agreement," dated January 4, 2001.

602, 804 P.2d 133, 135 (App.1991). The parties must intend to be bound. *Id.* In circumstances in which the parties contemplate the execution of a written document incorporating the terms of their oral agreement, determining whether there was an intent to be bound by the oral contract may be particularly challenging.

¶ 9 In order to meet a statutory or rule requirement, some contracts do not bind the parties until they are executed in writing. *See, e.g.,* Ariz.Rev.Stat. ("A.R.S.") § 44–101 (1994) (Statute of Frauds); Ariz. R. Civ. P. 80(d) (binding agreements between parties or attorneys, if disputed, must be either in writing or professed in open court and entered into record).

■ ¶ 10 However, there is no rule or statute requiring workers' compensation settlement agreements to be in writing.[2] Nor is the ICA bound by the Arizona Rules of Civil Procedure, *see* A.R.S. § 23–941(F) (1995), and thus Rule 80(d) is not applicable. We recognize that one of the ICA's internal policies pertaining to approval of a C & S requires that the applicant have read and understood the terms of the C & S. *See* ICA Policies and Procedures for Processing Compromise and Settlement Agreements (approved Apr. 9, 1987; revised Sept. 24, 1987), *reprinted in* Ray J. Davis et al., *Arizona Workers' Compensation Handbook* App. C–7 to –9 (1993). While this policy implies that a C & S must be in writing, the internal policies of the ICA are advisory only. *Holsum Bakery v. Indus. Comm'n,* 191 Ariz. 255, 257, 955 P.2d 11, 13 (App.1997).[3] We hold that an oral settlement agreement may bind the parties in contract, even though their written agreement is not formally executed, as long as it is clear that the parties intended to be

so bound. *AROK Constr. Co. v. Indian Constr. Services,* 174 Ariz. 291, 297, 848 P.2d 870, 876 (App.1993); Restatement (Second) Of Contracts § 27 (1981).[4]

■ ¶ 11 Accordingly, in cases in which the parties to an oral agreement contemplate the later execution of a written document, the fact-finder must resolve whether the parties intended the written document to be a mere memorialization of an already binding oral agreement, or whether they intended to be bound only upon execution of a formal, written instrument. *Pyle v. Wolf Corp.,* 354 F.Supp. 346, 352 (D.Or.1972); *accord Frost Constr. Co. v. Lobo, Inc.,* 951 P.2d 390, 394 (Wyo.1998); 17 C.J.S. *Contracts* § 69 (1999).

■ ¶ 12 The determination of intent is a factual question. *Callie v. Near,* 829 F.2d 888, 890–91 (9th Cir.1987). If the witnesses' testimonies regarding intent conflict, the ALJ must resolve those conflicts. *Hartford v. Indus. Comm'n,* 178 Ariz. 106, 109, 870 P.2d 1202, 1205 (App.1994). The party asserting the existence of the oral contract has the burden of proof. *Thompson v. Pike,* 122 Idaho 690, 838 P.2d 293, 299 (1992); *accord Alexander v. O'Neil,* 77 Ariz. 91, 98, 267 P.2d 730, 734 (1954) ("he must prove each fact essential thereto, including the existence of mutual intention. . . .").

■ ¶ 13 The determination of the parties' intent must be based on objective evidence, not the hidden intent of the parties. *Hartford,* 178 Ariz. at 112, 870 P.2d at 1208. In making the determination, the ALJ may consider surrounding circumstances and the conduct of the parties. *Burkett v. Morales,* 128 Ariz. 417, 418, 626 P.2d 147, 148 (App. 1981) (citing 3 *Corbin on Contracts,* § 577); 17 C.J.S. *Contracts* § 69. That the parties

---

**2.** The only requirement is that a settlement agreement be approved by the ICA. Rules of Procedure for Workers' Compensation Hearings Before the Industrial Commission of Arizona, Ariz. Admin. Code ("A.A.C.") R20–5–120 (2000); *see also Safeway Stores, Inc. v. Indus. Comm'n,* 152 Ariz. 42, 48, 730 P.2d 219, 225 (1986) ("settlements will have to be made in the open, subject to Commission approval.").

**3.** If the ICA disagrees with the disposition of this case, it may exercise its rulemaking authority pursuant to A.R.S. § 23–107(A)(1) (1995) to pro-

mulgate a rule *requiring* compromise and settlement agreements to be *signed* prior to approval. *See Schuck & Sons,* 192 Ariz. at 234 n. 1, 963 P.2d at 313 n. 1.

**4.** In its argument, Employer asks whether an unsigned C & S would ever be enforced against an injured worker who has agreed through his attorney to compromise his claim, but later declines to sign the written settlement agreement. That issue has not been presented in this case and is not specifically addressed here.

contemplate the preparation of a written agreement does not preclude a finding that an oral contract exists. *AROK Constr. Co.*, 174 Ariz. at 299, 848 P.2d at 878; *accord Fotinos v. Baker*, 164 Ariz. 447, 448, 793 P.2d 1114, 1115 (App.1990) (that oral agreement "was later to be reduced to writing does not affect the enforceability of the [oral] contract.").

¶ 14 In reviewing a workers' compensation award, we defer to the ALJ's factual determinations, but review conclusions of law *de novo. Vance Int'l v. Indus. Comm'n*, 191 Ariz. 98, 100, ¶ 6, 952 P.2d 336, 338 (App.1998). In the decision upon review, the ALJ made findings of fact and then reached the following pertinent conclusions of law:

> 4. The issue is one of contract law. Although there was acceptance and offer by the parties' attorneys, at the time of death, there was no fully executed C & S. The death was a substantial change in the conditions which affected the settlement amount; if the case was litigated and found compensable, the estate would only be entitled to benefits from the date of injury to date of death as Applicant was still receiving active medical care. The C & S agreement included consideration for a scheduled permanent impairment, which would never accrue.
>
> 5. When informed of the death, Mr. Lieberman revoked the offer.
>
> 6. In my opinion, it is not equitable to approve a C & S where both parties have not signed the agreement. Furthermore, it is not equitable to approve a C & S where there was a material change of the facts prior to the C & S being fully executed.
>
> 7. Based on the foregoing, I am not approving the C & S that was submitted.... As a result the parties still have the right to litigate the issue of compensability.

¶ 15 The decision upon review—especially the portion quoted above—reveals the following legal errors, which lead us to set aside the decision. First, the decision does not recognize that parties in a workers' compensation proceeding may agree orally to a settlement that they intend to be binding, with the written C & S to be simply a memorialization of their oral agreement. Second, the decision does not contain the required factual determination of the parties' intent in this case (that is, whether the parties intended to be bound by their oral agreement or whether they intended to bound only upon execution of a written C & S). Without a clear factual finding establishing the parties' intent, a correct legal conclusion cannot be made regarding the existence or non-existence of a binding oral contract.

¶ 16 Additionally, the decision suggests that the perceived equitableness of the settlement, in light of the applicant's untimely death, is a factor to be considered by the ALJ when deciding whether to approve the settlement. *See* conclusion of law 6, quoted in ¶ 14 above. Whether the ALJ considers the agreement to be inequitable is irrelevant for purposes of determining if an oral agreement existed between the parties in the first place and if so, whether to approve or disapprove the settlement.

¶ 17 The proper analysis requires that the ALJ first determine the essential fact of the parties' intent, so that she can then determine whether an oral contract exists. If an oral contract is found to exist, she must then review the terms of that contract, within the limits allowed her under the law, in order to properly exercise her discretion to approve or disapprove it. The required considerations are described in *Employers Mut. Liab. Ins. Co. of Wisconsin v. Indus. Comm'n*, 121 Ariz. 558, 561, 592 P.2d 392, 395 (App.1979):

> Once the Commission has determined that, as here, a genuine and bona fide dispute as to compensability exists, it should determine whether the settlement was fairly entered into, and whether it is free from fraud, deceit, misrepresentation, mistake and overreaching. If such is the case, the settlement should be approved.[5]

5. These inquiries have been incorporated into the ICA's own policy regarding the procedures an ALJ should follow before approving a compromise and settlement agreement. *See* ICA Policies and Procedures for Processing Compromise and Settlement Agreements (approved Apr. 9, 1987;

## Conclusion

¶ 18 For the reasons set forth above, we set aside the decision upon review.

CONCURRING: REBECCA WHITE BERCH, Presiding Judge and MICHAEL D. RYAN, Judge.