NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

## DIVISION ONE

---

DMARC 2006-CD2 INDIAN SCHOOL, LLC, an Arizona limited liability company, *Plaintiff/Appellee*,

*v.*

BUSH REALTY AT STEELE PARK, LLC, a Delaware limited liability company; SAMUEL WEISS, an individual, *Defendants/Appellants*.

No. 1 CA-CV 14-0603
FILED 12-13-2016

---

Appeal from the Superior Court in Maricopa County
No. CV2011-008974
The Honorable Katherine M. Cooper, Judge

**AFFIRMED**

---

COUNSEL

Snell & Wilmer, LLP, Phoenix
By Robert R. Kinas, Mark E. Konrad, Courtney Leigh Henson
*Counsel for Plaintiff/Appellee*

Hymson Goldstein & Pantiliat, PLLC, Scottsdale
By Lori N. Brown, John L. Lohr, Jr.
*Counsel for Defendants/Appellants*

---

**MEMORANDUM DECISION**

Judge Donn Kessler delivered the decision of the Court, in which Presiding Judge Kenton D. Jones and Judge Randall M. Howe joined.

---

**K E S S L E R**, Judge:

¶1 Appellants Bush Realty at Steele Park, LLC ("Bush Realty") and Samuel Weiss ("Weiss") appeal from the superior court's granting of Appellee DMARC 2006-CD2 Indian School, LLC's ("DMARC") motions for summary judgment.[1] Weiss argues on appeal that: (1) the superior court lacked personal jurisdiction; (2) service was improper; (3) the case should have been transferred to New York; (4) the superior court should have granted Weiss's motion for summary judgment on liability and denied DMARC's; (5) nothing supported the award of damages; and (6) DMARC received a double recovery. For the following reasons, we affirm the superior court's judgment.

## FACTUAL AND PROCEDURAL HISTORY

¶2 Ezra Beyman ("Beyman") was a longtime business associate of Weiss. Beyman was the principal of Empirian at Steele Park, LLC ("Empirian"). In 2004, Beyman and Weiss invested in an Arizona apartment complex, the Empirian at Steele Park Apartments ("Property"), through their respective LLCs. In November 2005, they refinanced the Property with a $38.5 million loan from DMARC's predecessor. Beyman and Weiss signed the loan documents, including a personal "Guaranty and Indemnity" ("Guaranty") for $4.8 million.

¶3 Weiss signed the Guaranty at the Drier law firm in New York. Weiss was presented with only the signature pages of the Guaranty and signed them without inquiring about the rest of the document. The

---

[1] Although both Bush Realty and Weiss have appealed, the arguments on appeal relate only to the judgment against Weiss. Furthermore, Bush Realty stipulated to DMARC's motion for summary judgment on liability. Thus, because Appellants do not contest the validity of Bush Realty's stipulation or the award of damages against Bush Realty, we will not consider these issues on appeal as to Bush Realty and affirm the judgment as to Bush Realty.

signature pages bear the footer "Guaranty and Indemnity" and contain Weiss's signature under the header "Guarantor" and above the name "SAMUEL WEISS, individually."

¶4            Empirian and Bush Realty defaulted on the loan, and the Property was sold at a trustee's sale in April 2011. DMARC was the successful bidder at the trustee's sale, purchasing the Property for $30.8 million. The parties stipulated the fair market value of the Property at the time of the trustee's sale was $34.35 million. DMARC later resold the Property for approximately $36 million.

¶5            DMARC filed suit in April 2011 for a deficiency judgment for amounts owed. After repeated failed attempts to serve Weiss, the superior court authorized DMARC to serve Weiss by U.S. mail and posting at his residence. DMARC mailed a copy of the pleadings by certified mail, but they were returned marked "refused." DMARC's process server confirmed with Weiss's wife that the residence was in fact his home, but she refused to accept service on his behalf. Ultimately, a copy of the pleadings was posted on the residence, and Weiss's wife was informed that a copy had also been mailed to that address.

¶6            Weiss appeared specially and sought dismissal of the claims against him based on defective service of process and lack of personal jurisdiction. In the alternative, Weiss requested that the case be transferred to New York as a more convenient forum. The superior court denied his motion, finding that service was proper pursuant to the court's earlier order permitting service by mail and posting. However, the court held that material issues of fact as to personal jurisdiction precluded dismissal or summary judgment on that issue. Weiss then filed a general answer to the complaint and did not assert either that the court lacked personal jurisdiction over him or that service of process was insufficient.[2]

¶7            DMARC and Weiss both moved for summary judgment regarding liability. Beyman, Empirian, and Bush Realty stipulated to DMARC's motion for summary judgment on liability. The superior court granted DMARC's motion for summary judgment and denied Weiss's motion. DMARC then moved for summary judgment on damages, which

---

[2]       Nor did either of the parties again raise the issue of personal jurisdiction over Weiss.

the superior court also granted. The court awarded DMARC $4.15 million, plus interest, against Weiss personally.

**¶8**         Weiss timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-2101(A) (2016) and 12-120.21(A)(1) (2016).[3]

## DISCUSSION

I.        Motions for Summary Judgment

**¶9**         Because many of Weiss's arguments on appeal hinge on the validity of the underlying contract, we will address the motions for summary judgment first. We review a grant of summary judgment de novo, viewing the facts and reasonable inferences in the light most favorable to the non-prevailing party. *First Am. Title Ins. Co. v. Johnson Bank*, 239 Ariz. 348, 350, ¶ 8 (2016) (citations omitted).

A. Liability

**¶10**         The superior court granted DMARC's motion for summary judgment on liability. The court found Weiss personally guaranteed the loan and was not excused from his obligations because he did not read the agreement. Weiss argues summary judgment should not have been granted because he did not review the Guaranty before signing it and therefore never assented to its terms.

**¶11**         Construction and enforcement of a guaranty is governed by general contract principles. *See Pi'Ikea, LLC v. Williamson*, 234 Ariz. 284, 287, ¶ 10 (App. 2014). As with any question of contract interpretation, the appellate court's goal is to effectuate the parties' intent, giving effect to the guaranty contract in its entirety. *Tenet Healthsystem TGH, Inc. v. Silver*, 203 Ariz. 217, 220, ¶ 7 (App. 2002) (citation omitted). "The determination of the parties' intent must be based on objective evidence, not the hidden intent of the parties." *Tabler v. Indus. Comm'n*, 202 Ariz. 518, 521, ¶ 13 (App. 2002) (citation omitted). In the absence of fraud, a court must give effect to the contract as it is written, and the clear and unambiguous terms or provisions of the contract will be applied as written. *Bender v. Bender*, 123 Ariz. 90, 93 (App. 1979) (citation omitted).

---

[3]        We cite to the most recent version of statutes unless changes material to this decision have occurred.

¶12 Weiss's primary argument is that the superior court erred in granting summary judgment on liability because he was never provided a copy of the Guaranty before signing the signature pages and did not know what the terms were before he signed. We hold the court did not err. The Guaranty states "Samuel Weiss, an individual . . . hereby unconditionally and irrevocably guarantees up to $4,800,000 of the principal balance of the Loan." Weiss does not dispute that he signed the Guaranty or claim that he was defrauded.

¶13 A party's failure to read a contract that he has signed is not in and of itself grounds to invalidate the writing. *See In re Henry's Estate*, 6 Ariz. App. 183, 186 (1967). Arizona law on this issue is clear:

> When a person bound by a writing has carelessly signed the same without reading it, the mere fact that he believed it to be something else than what it was, when such belief was not brought about by the misconduct of the other party, furnishes no ground for the admission of parol evidence that he did not mean to execute it, for courts are not under the duty of relieving parties of the consequences of their own gross negligence.

*Bradley v. Indus. Comm'n*, 51 Ariz. 291, 299 (1938). As a matter of law, a competent person is held to know the contents of an agreement he signs. *Henry's Estate*, 6 Ariz. App. at 186 (citation omitted).

¶14 Weiss's failure to read or understand the Guaranty does not excuse him from liability.[4] He signed a $38.5 million loan and the personal

---

[4] At oral argument and in his brief, Weiss asserted that "Appellee's Rule 30(b)(6) witness, Dmitry Sulsky, admitted in his deposition that [Weiss] would have needed to review the actual Guaranty document, and not just the signature page, to know what he was guaranteeing and for it to be enforceable." However, the deposition testimony supports the opposite argument. The relevant testimony is as follows:

> Q: To the best of your knowledge from reviewing the books and records, did anyone tell Samuel Weiss he was personally guaranteeing a loan? . . .

guaranty without asking for or reading the documents. Weiss admits he signed the Guaranty. His signature appears under the title "Guarantor" and above "Samuel Weiss, individually." He does not say that he asked to see the documents before signing them and that someone refused to show them to him. Although Weiss frequently notes the legal troubles faced by the now-defunct Drier law firm that represented the lender and the alleged insignificant inconsistencies in the format of the documents, he does not claim he was defrauded into signing the Guaranty or misled about its content. *See Hofmann Co. v. Meisner*, 17 Ariz. App. 263, 267 (1972) (finding guarantor who did not read application was still bound to personal

---

A: Right above his signature, it says "Guarantor." And then at the bottom, it says "Guaranty and Indemnity." It sounds like, based on this alone, it's crystal clear that he was signing as a guarantor for the loan.

Q: So it's your position that, based on the word "guarantor" at the top above his signature and the words "Guaranty and Indemnity" at the bottom, that that's notice to the person that they are guaranteeing—what?

A: He had a chance to review the entire document, so I'm not sure. Are you just saying that he signed it without reading the whole document?

Q: Well, what you just told me is the word "guarantor" is at the top above his signature.

A: That would give you a good idea that it's probably a guaranty if it says guarantor on it. . . .

Q: But does this page tell you anything besides you're guaranteeing something?

A: If you're looking at that page by itself, then probably not.

Q: How would you know what you are guaranteeing? What would you have to do?

A: You have to review the document. . . . And the other documents that he signed that have references to . . . the guaranty. So it's—I guess it's up to him to determine what he is signing right next to his title where it says "guarantor."

guarantee because no evidence showed that the plaintiff directly or indirectly misrepresented the contents).

¶15 Moreover, Weiss has not demonstrated that any party had a duty to ensure he read the Guaranty or to explain the specific contents of the document to him before signing. Even viewing the facts in the light most favorable to Weiss, at worst no one showed him the full text of the Guaranty or told him what was contained within. There were no misrepresentations by DMARC and no allegations that—had Weiss asked for them—he would not have been able to review the documents. Weiss was responsible for knowing what he signed.

¶16 Weiss also contends the Guaranty did not bind him because he believed it was not a personal guaranty but was instead a "bad boy" guaranty. Even if this was Weiss's understanding, it does not control over the written Guaranty's unambiguous language. Weiss presented no evidence any party misrepresented the Guaranty's terms to lead him to this understanding. He is bound by the unambiguous provisions of the contract as written, not his unstated subjective intent. *See Tabler*, 202 Ariz. at 521, ¶ 13.

¶17 We affirm the superior court's grant of summary judgment on liability for DMARC.

B. Damages

¶18 Weiss argues the superior court erred in granting DMARC's motion for summary judgment on damages for three reasons: (1) the facts on which the summary judgment relied were in dispute; (2) insufficient evidence supported the damage calculations; and (3) the damage award resulted in DMARC receiving a double recovery.

¶19 Weiss's first argument fails. The superior court had already granted summary judgment as to Weiss's liability. The Guaranty is clear and unambiguous. Although Weiss continued to assert the Guaranty did not bind him, these facts were no longer in dispute for purposes of the motion on damages.

¶20 Secondly, Weiss cites several cases, including *Wells Fargo Bank, N.A. v. Allen*, 231 Ariz. 209 (App. 2012) and *Trimble Cattle Co. v. Henry & Horne*, 122 Ariz. 44 (App. 1979), to argue DMARC did not provide sufficient evidence and affidavits to support the damages calculation. However, these cases deal with "open accounts" and not promissory notes. Whereas a promissory note, such as the one at issue here, is a single note

with plain and unambiguous terms, "an open account is one where there are running or concurrent dealings between the parties, which are kept unclosed with the expectation of further transactions." *Cont'l Cas. Co. v. Grabe Brick Co.*, 1 Ariz. App. 214, 217 (1965) (citation omitted). DMARC was not required to provide affidavits to prove an amount unambiguously asserted in the Guaranty.

¶21 Weiss also disputes the sufficiency of the evidence supporting the finding that no payments were made on the principal of the loan, thereby making the original amount of the loan the total amount remaining owed. The Guaranty provides the original loan amount was $38.5 million. Beyman and Empirian admitted that no payments were made on the loan after November 1, 2009. The loan also states that payments were interest only until December 1, 2010 and principal payments began January 1, 2011. Payment of a loan is an affirmative defense and the defendant has the burden to prove the defense with some affirmative evidence. *B&R Materials, Inc. v. U.S. Fid. & Guar. Co.*, 132 Ariz. 122, 124 (App. 1982) (citation omitted). Weiss provided no evidence principal payments were ever made on the loan and simply asserted DMARC did not prove payments were not made. The superior court correctly found the total amount owed was the original principal, $38.5 million.

¶22 The superior court made its damage calculation according to A.R.S. § 33-814(1). The statute states

> the deficiency judgment shall be for an amount equal to the sum of the total amount owed the beneficiary as of the date of the sale . . . less the fair market value of the trust property on the date of the sale . . . or the sale price at the trustee's sale, whichever is higher.

A.R.S. § 33-814(1) (2014). The initial loan amount was $38.5 million and no payments were ever made on the principal. DMARC was the successful bidder at the trustee's sale, purchasing the Property for $30.8 million. The parties stipulated the fair market value of the Property at the time of the trustee's sale was $34.35 million. Thus, the deficiency judgment is calculated according to A.R.S. § 33-814(1) by subtracting the fair market value at the time of the trustee's sale from the total amount of the loan. The result is a deficiency of $4.15 million, the amount the superior court found.

¶23 Finally, Weiss's claim that DMARC enjoyed a double recovery misinterprets A.R.S. § 33-814(1). The statute states the value is calculated as of the date of the trustee's sale. As the superior court correctly

noted, the plain language of the statute does not provide for alternative valuations based on later events or other contingencies. That DMARC later sold the property for $36 million does not alter the calculation date specified by the Legislature. Thus, Weiss's assertions of a double recovery by DMARC are baseless.

## II.      Jurisdiction

**¶24**        The superior court denied Weiss's motion to dismiss based on personal jurisdiction. Weiss asserts the superior court did not have jurisdiction and incorrectly denied his motion. We disagree.

**¶25**        Jurisdiction is a question of law subject to de novo review. *Ader v. Estate of Felger*, 240 Ariz. 32, 43, ¶ 37 (App. 2016) (citation omitted). Forum selection clauses are a valid method by which a defendant may consent to a particular court's exercise of personal jurisdiction. *Desarrollo Immobiliario y Negocios Industriales De Alta Tecnologia De Hermosillo, S.A. De C.V. v. Kader Holdings Co. Ltd.*, 229 Ariz. 367, 371, ¶ 11 (App. 2012) (citation omitted) (finding forum selection clause applied to nonresident guarantor). A "forum selection clause that is fairly bargained for and not the result of fraud will be enforced so long as to do so is reasonable at the time of litigation and does not deprive a litigant of his day in court." *Societe Jean Nicolas Et Fils v. Mousseux*, 123 Ariz. 59, 61 (1979). The burden of showing unreasonableness or deprivation of a day in court falls upon the party challenging the validity of the clause. *Id.* Weiss has not carried that burden.

**¶26**        As discussed above, *supra* I.A., Weiss is bound by the Guaranty, regardless of whether he read it or understood its contents. The Guaranty states—in all capitals—that each signor

> knowingly, intentionally and voluntarily . . . (a) submits to personal jurisdiction in the state in which the property is located over any suit, action or proceeding by any person arising from or relating to this Guaranty, (b) agrees that any such action, suit or proceeding may be brought in any state or federal court of competent jurisdiction sitting in the county and state, in which the property is located, (c) submits to the jurisdiction of such courts, and (d) agrees that neither of them will bring any action, suit or proceeding in any other forum.

Failure to read this clause does not excuse Weiss from its terms. Weiss has not demonstrated that jurisdiction in Arizona is unreasonable or that he was deprived of a day in court. The language is unambiguous.

**¶27** Even if the forum selection clause did not bind Weiss, he had sufficient contacts with Arizona to provide jurisdiction. Weiss attempts to distinguish *Hamada v. Valley Nat. Bank*, 27 Ariz. App. 433 (1976), in which the execution of a guarantee letter for an Arizona transaction by the nonresident defendant was sufficient minimal contact with Arizona for jurisdiction. *Id.* at 436. Weiss argues *Hamada* does not apply because, unlike the defendant in that case, Weiss did not know his signature would be used for a transaction in Arizona. We are unpersuaded. Weiss does not claim he was unaware that the Property is in Arizona or that the documents he was signing were related to the Arizona Property. Weiss purposefully directed his activities into Arizona by guaranteeing a loan made to his company for purchasing real estate in the state. The litigation resulted from an injury arising out of that activity. *See Armstrong v. Aramco Servs. Co.*, 155 Ariz. 345, 349 (App. 1987) (clarifying that a state may assert specific jurisdiction in "suits arising out of or related to the defendant's contacts with the forum"). This is sufficient to provide Arizona courts with jurisdiction, even without the forum selection clause.

III.    Service of Process

**¶28** Weiss argues the case should have been dismissed for insufficiency of service of process. He asserts that service of process was invalid because it did not comply with Arizona Rule of Civil Procedure 4.2, outlining the requirements for service outside the state. We disagree.

**¶29** Service of process was sufficient because Weiss was served in accordance with the terms of the Guaranty. A party may contract away his right to personal service. *Coffee v. Nat'l Equip. Rental, Ltd.*, 9 Ariz. App. 249, 252 (1969) (citation omitted). The Guaranty states:

> All notices, demands, requests or other communications to be sent by one party to the other hereunder or required by law shall be in writing and shall be deemed to have been validly given by . . . depositing the same in the United States mail, postage prepaid, registered or certified mail, return receipt requested, addressed to the intended addressee at its address set forth on the first page of this Guaranty . . . . Rejection or other refusal to accept or the inability to deliver because of changed address of which no notice was given as herein required shall be deemed to be receipt of the notice, demand or request sent.

DMARC served Weiss via certified mail at the address provided in the Guaranty. That the envelope was returned marked "refused" does not negate the effectiveness of service under the terms of the Guaranty.

**¶30**        DMARC filed affidavits showing repeated attempts to serve Weiss in person and a "refused" certified mailing. Having demonstrated the required due diligence, DMARC petitioned the superior court to allow service by publication under Rule 4.2(f). The superior court declined to rule on the appropriateness of service by publication, but it authorized DMARC to serve process by certified mail and by posting at Weiss's residence. Efforts at serving Weiss through personal service at his residence and on his wife were refused. As Weiss received actual, timely notice of the action consistent with the Guaranty and had the opportunity to be heard, we find service was proper.

IV.    Forum Non-Conveniens

**¶31**        Forum non-conveniens is "an exceptional tool to be employed sparingly" rather than "a doctrine that compels plaintiffs to choose the optimal forum for their claim." *Parra v. Cont'l Tire N. Am., Inc.*, 222 Ariz. 212, 214, ¶ 8 (App. 2009) (citation omitted). Because a decision on forum non-conveniens requires a "weighing of imponderables," *Cal Fed Partners v. Heers*, 156 Ariz. 245, 247 (App. 1987) (citation omitted), we "will not overturn the trial court's ruling on the application of forum non conveniens absent an abuse of discretion," *Coonley & Coonley v. Turck*, 173 Ariz. 527, 531 (App. 1993) (citation omitted). The court abuses its discretion "when it fails to balance the relevant factors." *Parra*, 222 Ariz. at 215, ¶ 8 (citation omitted). "Where factors of convenience are closely balanced, the plaintiff is entitled to its choice of forum." *Cal Fed*, 156 Ariz. at 248.

**¶32**        Weiss argues that because both Weiss and Beyman, as well as many witnesses, were located in New York, the case should have been tried there. He also notes the inconvenience and additional cost of travel and hiring Arizona counsel. Even assuming the Guaranty's Arizona forum selection clause was invalid, the superior court did not err in refusing to transfer the case to New York. Although New York may have been a more convenient forum in some regards, the superior court did not abuse its discretion in keeping the action in Arizona. There is nothing patently unjust in allowing an action in Arizona to enforce contract provisions, to be construed under Arizona law, regarding the trustee's sale of an Arizona property. Therefore, we affirm.

**CONCLUSION**

**¶33** For the foregoing reasons, we affirm all aspects of the superior court's judgment.

**¶34** Weiss has requested attorneys' fees and costs on appeal, which we deny. DMARC did not request attorneys' fees, but we grant DMARC all taxable costs on appeal upon timely compliance with Arizona Rule of Civil Appellate Procedure 21.



AMY M. WOOD • Clerk of the Court
FILED: AA